LAWRENCE G. COLE *v.* VALMA E. COLE.

(91 A2d 819)

May Term, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed October 7, 1952.

356

*Hunt & Hunt* for the petitioner.

*Robert H. Ryan* and *Frederick M. Reed* for petitionees Parsons.

CUSHING, J. This matter comes to this Court before final judgment. It arises from the trial court's findings on the hearing of libelee's petition for contempt and orders in respect to certain real and personal property. The findings show the following material facts:

On April 29, 1946, Lawrence G. Cole obtained title by warranty deed to the major portion of the property in question in the Town of Corinth and on March 29, 1947, he obtained title to a small parcel of approximately one-fourth acre adjoining. These premises were not then in a state of active operation as a farm but did have on them a substantial and pleasant house and other buildings and were attractively surrounded by 270 acres of land, a good portion of which was wooded.

On October 2, 1947, Lawrence G. Cole and Valma E. Cole were married, and following the marriage they went to live on the prem-

ises in Corinth. They made this their home, lived there and furnished the house with various articles of furniture and furnishings which they acquired.

In January, 1949, Lawrence and Valma went to Providence, R. I., in order to get away from the winter and for Valma to study music. Much of her clothes and many of her personal effects, as well as all of the furniture and furnishings, remained in the house. In Providence the Coles lived at the residence of Mr. Cole's aunt.

During the winter, at the request of Mr. Cole's aunt, Valma looked after a friend of the family, an elderly doctor who was ill. In this Lawrence assisted. In May 1949 he returned to Corinth leaving Valma in Providence to look after the doctor. Sometime in June she visited Corinth for about ten days, returning to Providence where she remained until after the doctor's death in September.

October 31, 1949, Valma left Providence to join her husband in Corinth. He failed to meet her as agreed, she went to the home, found that he was not there and awaited his arrival four days. She found signs that some other woman had been occupying the home.

When Mr. Cole arrived he told Valma that he had to be away for two weeks more; in the meantime if she would return to Providence he would bring her back to Corinth at the end of that time. She left for Providence but Cole never brought her back; instead he instituted divorce proceedings.

The libel of Lawrence Cole was dated July 6, 1950 and docketed July 8. On July 31, Valma's answer and petition for alimony, together with order for notice and a temporary injunction was served on Cole.

The record shows that Valma's answer and petition alleges that the libellant is possessed of certain personal property together with "the homestead farm in the Town of Corinth, County of Orange and State of Vermont, together with household furniture, farm tools and equipment, etc." She has a prayer for temporary alimony pending the suit and permanent alimony in the event a divorce is granted to Lawrence Cole and further prays "that the libellant be enjoined from selling or mortgaging, or giving away, or otherwise disposing of or encumbering the property." On August 8, after hearing, at which Cole was not present, a further injunction and order was issued which was served on libellant's attorney.

In a booklet put out by the Vermont Development Commission in 1950 entitled "Vermont Farms and Summer Homes for Sale"

Cole had advertised the property in Corinth for sale. James Parsons and Margaret, his wife, came to Vermont looking for a country home, they saw the property in the latter part of July, liked the place and decided to buy it.

Previous to the viewing of the premises by the Parsons, Cole had given a deed of the property to one Edward P. Perdue. He, being unable to raise the purchase price, reconveyed to Cole on August 10, 1950, who, on the same day, conveyed the property to Mr. and Mrs. Parsons. The draftsman who prepared the deed did not mention homestead rights or inquire of the parties if Mr. Cole had a wife. The consideration for the real and personal property conveyed to the Parsons was $5,221.00.

The Parsons received the key to the premises and went into possession on August 10, 1950. Some time in November Mr. Parsons learned that Mr. Cole had a wife. About January 13, 1951 Mr. Parsons first came in direct communication with Mrs. Cole by telegraph and then by telephone. Mrs. Cole raised the question of her rights in the property but made no specific claim. In the latter part of January Mr. Parsons took up the matter with Attorney Finn and learned of the pending divorce between Mr. and Mrs. Cole.

On May 19, 1951, the Parsons went into occupancy, since which time they have gone forward improving and developing the premises.

After the Parsons had decided to purchase the property, they obtained from the town clerk a statement of title. None of the injunction orders in the Cole divorce case had ever been recorded in the town clerk's office.

The Parsons bought in good faith without any knowledge that Cole was a married man, that he and his wife were having difficulties which had culminated in divorce proceedings or that there were any outstanding homestead rights.

On July 3, 1951, present counsel having entered for libelee, Valma E. Cole brought her petition for contempt against Lawrence G. Cole and therein joined James Graham Parsons and Margaret Josephine Parsons directing them to appear before the Orange County Court or some Superior Judge and "to show cause why said conveyance of said real estate should not be adjudged void," and such other orders should not be made in respect to the possession, control and use of the homestead real estate and the personal property.

The petition came on for hearing before the full court on Septem-

ber 4, 1951, further hearing being had on October 1. On December 5 findings of fact were filed, and on January 9, 1952, the court's order sending the cause to the Supreme Court was filed. The petitioner excepted to certain of the court's findings, to the failure to find as requested and to the admission of certain evidence. The petitionees, Parsons and wife, excepted to certain of the findings.

Petitioner's first exception is to the second sentence of finding No. 9. This finding reads as follows: "The Parsons received the key to the premises on August 10, 1950, and went into possession at that time but they did not go into occupancy until May 19, 1951. They have remained in possession ever since, awaiting final determination of the rights of various parties in the premises."

Petitioner excepted on the ground that the Parsons have not been awaiting any determination of rights or in any way deferring to the petitioner and her undenied right of homestead in the premises, as properly characterizing their possession, but have excluded her from the premises, and even after they learned of the pending divorce case and the proceedings therein, spent large sums of money in improving and developing the premises.

In Valma's answer to the libel brought by Lawrence she does not ask to be put into possession of the property in Corinth, nor that alimony, if awarded, be made a charge upon the property. She has never asked the Parsons nor demanded of them that she be put into possession. How, then, can it be said that they have excluded her from possession? The Parsons were simply joined in her petition and they would, therefore, await "final determination of the rights of the parties in the premises." The finding is supported by the evidence and record.

The second exception is to those portions of Findings 10 and 13 which state that when the Parsons bought the premises they "were unaware that Mr. Cole had a wife" and the third exception is to Finding 11 that "it was not until November 1950 that the Parsons learned that there was a Mrs. Cole"; on the grounds that they are immaterial and that the Parsons were bound to know the marital relation between Lawrence Cole and Valma Cole.

■ Petitioner claiming that these findings are immaterial she is not harmed by them. Exceptions to immaterial findings are not for consideration. *Turner* v. *Bragg,* 113 Vt 393, 398, 35 A2d 356, and cases cited.

Petitioner's fourth exception is to the court's conclusion in Find-

ing 13 that the Parsons, when they bought the premises in question, were unaware that Mr. Cole had a wife, therefore they "had no knowledge of the marital troubles of the Coles and the proceedings growing out of them." This part of the finding is excepted to on the ground "that the divorce case, being pending in court, the Parsons were charged with knowledge thereof and the proceedings therein." The petitioner relies on the doctrine of *lis pendens*.

The rule of *lis pendens* is predicated on the presumption that as proceedings in courts of justice are public, and are often of general interest, all persons are conclusively deemed to have knowledge of what takes place in the courts, and necessarily accept any interest which they may acquire in property in litigation and under an implied obligation to abide by the results thereof. The law is not founded upon notice, either express or implied, but upon necessity. Otherwise every litigation might be rendered vain by the transfer of the property subject thereto to a person not a party to the action.

The foregoing rule of law is aptly described and explained in *Houston* v. *Timmerman*, 17 Ore 499, 21 P 1037, 1038, 11 Am St Rep 848-852, 4 LRA 716, where the court said:

"Among the ordinances of rules adopted by Lord-Chancellor Bacon 'for the better and more regular administration of justice' was one which provided that where a person 'comes in pendente lite, and while the suit is in full prosecution, and without any color of allowance, or privity of the court, there regularly the decree bindeth.' Chancellor Kent said that a *'lis pendens* duly prosecuted, and not conclusive, is notice to a purchaser so as to affect and bind his interest by the decree.' Strictly speaking, however, the doctrine of *lis pendens* is not founded upon notice, but upon reasons of public policy, founded upon necessity. 'It affects him' said Lord-Chancellor Cranworth 'not because it amounts to notice, but because the law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute so as to prejudice the opposite party * * * The necessities of mankind require that the decision of the court shall be binding, not only on the litigant parties, but also on those who derive title under them by alienation made pending the suit, whether such alienees had or had not notice pending proceedings. If this were not so, there could be no certainty that litigation would ever come to an end.' *Bellamy* v. *Sabine*, 1 De Gex & J 566. The main purpose of the rule is to keep the subject matter

of the litigation within the power of the court until the judgment or decree shall be entered; otherwise by successive alienations, its judgment or decree could be rendered abortive, and thus make it impossible for the court to execute its judgments or decree. Hence, the general proposition, that one who purchases of either party to the suit the subject-matter of the litigation after the court has acquired jurisdiction is bound by the judgment or decree, whether he purchased for a valuable consideration or not, and without any express or implied notice in point of fact, is sustained by many authorities, and disputed by none. *Eyster* v. *Gaff,* 91 US 521, 23 L Ed 403; *Grant* v. *Bennett,* 96 Ill 513; *Randall* v. *Lower,* 98 Ind 261; *Daniels* v. *Henderson,* 49 Cal 242; *Blanchard* v. *Ware,* 43 Iowa 530; *Carr* v. *Lewis,* 15 Mo App 551; *Currie* v. *Fowler,* 5 J. J. Marsh (Ky), 145; *Hiern* v. *Mill,* 13 Ves. 120; 1 Story's Eq. Jur., Sec. 405."

The doctrine is not a favorite of the court and will not be extended without strict necessity. *Leitch* v. *Wells,* 48 NY 585.

█ The rule of *lis pendens* is admitted to be harsh and to be justifiable only on the ground that individual rights must at times be made to yield to rules formulated for the general convenience; it is by no means a favorite of the courts; and as a general rule, they will construe it strictly and decline to extend its operation unless it is strictly necessary. 34 Am Jur 364, § 4.

V. S. 47, § 3230 empowers the court to which a libel for divorce is returnable, or a superior judge, to make such order as is just in regard to temporary alimony and funds to support the wife and minor children, and maintain the litigation during the pendency of the libel. V. S. 47, § 3231 grants injunctive powers to prevent the conveying or removing from the state such portion of his or her property as may be necessary to secure the alimony which may be decreed. V. S. 47, § 3232 provides that when filed and recorded in the office of a town clerk such orders shall be a lien upon such of the real and personal property of the respondent in such town, as is mentioned in the order. V. S. 47, Sections 3233 to 3240, inclusive, provide for the enforcement of such a lien.

█ The rule of *lis pendens* being founded on the ground of necessity, the enactment of V. S. 47, §§ 3230 to 3240, inclusive, removes that ground in divorce cases as they provide for the impressment of a lien on the real and personal property of the petitionee and accomplish all that the application of a harsh rule would. We hold

that these provisions afford the exclusive method of impressing such lien in divorce cases and that in those cases the rule of *lis pendens* does not apply.

Petitioner calls to our attention *Darling* v. *Osborne,* 51 Vt 148; *Kopper* v. *Dyer,* 59 Vt 477, 9 A 4, and *Bell's Admr* v. *St. Johnsbury & Lake Champlain R. R. Co.,* 85 Vt 240, 81 A 630. A careful examination of these cases discloses that they are not in point. All are suits in equity dealing with mortgaged property.

In *Darling* v. *Osborne* it was held that a new corporation formed by the bondholders of the old Montpelier & Wells River R. R. Company under the same name after the suit was commenced, need not be made a party as this corporation was bound by the judgment, having acquired an interest in the subject matter *pendente lite.*

In *Kopper* v. *Dyer, supra,* a cross bill was filed in which Dyer was plaintiff and Kopper, Briggs and Merritt were defendants. The latter, Briggs and Merritt, were the grantees by warranty deed of Kopper of the property in the original foreclosure conveyed as security for raising the money which Briggs had tendered Dyer in the original suit. The court held that it was unnecessary to bring them in as they purchased *pendente lite* and were bound by the decree.

*Bell's Admr* v. *St. Johnsbury & Lake Champlain R R Company* was a suit in chancery wherein it was sought to impress the net earnings of the railroad while in receivership for services rendered and material furnished to keep the railroad in repair and to run it before and at the time it went into the hands of receivers. It was urged by the defendant that the present bondholders or mortgagees should be cited in and heard. It was held that as these bondholders took their holdings after the taking over of the property by the defendant with the knowledge that the instant case was pending and the claims made therein, consequently they were not entitled to notice and hearing, the maxim "pendente lite nihil innovetur" being applicable.

Petitioner's fifth exception is to that part of finding 34, which reads: "the Parsons had no notice" of any injunction "constructive or otherwise," on the ground that it is not supported by the evidence, is contrary to the evidence, and that the Parsons were put on inquiry, which would have led them to knowledge of Cole's marital status, of the pending divorce case, and of the injunction.

A study of the transcript discloses that it was not until some time in November 1950 that Mr. and Mrs. Parsons learned that there was

a Mrs. Cole; at this time they learned that there was trouble in the Cole family and at some time in January 1951 the Parsons learned of the pendency of the divorce case. The court's conclusion that the Parsons at the time of the sale had neither actual nor constructive notice of any injunction is amply supported by the evidence.

Petitioner's sixth exception is to that part of Finding 38 which finds that because the injunction against conveying and encumbering the real estate was never recorded in the Land Records of Corinth, *the Parsons had no notice thereof and were in all respects, bona fide purchasers.* This finding is excepted to on the ground that lack of record does not show want of notice and the Parsons are chargeable with constructive notice of the injunction by being put on inquiry whereby they were charged with such knowledge of Cole's marital status, of the pending divorce case, and of the injunction as they would have received by such reasonable inquiry, and so cannot claim or be found to be bona fide purchasers.

In the hearing below petitioner did not question the bona fides of the Parsons. In her brief she claims that the finding by them that the house was occupied placed on them the duty to know that there was an injunction against Cole selling the property.

At the most the evidence showed that the house was occupied. The furniture and fixtures seen by the Parsons were such as would be found in any home. Six pairs of shoes then in the house were in no wise indicative that Cole was married. Far less would they indicate or put the Parsons on inquiry that Cole was having marital difficulties, that these difficulties had terminated in his bringing a divorce action, that a prayer for alimony had been filed by his wife and that an injunction against him had been issued.

Petitioner's seventh and eighth exceptions, which she briefs and discusses together, relate to that portion of Finding 38 which reads "no proceedings toward that end (the setting out of a homestead) are practical until a final determination has been made as to the state of the legal title" and to that portion of Finding 40 which postpones the setting out of a homestead, ("if it can be done") "until the state of the title stands finally determined."

V. S. 47, § 2610, provides that the homestead of a natural person not exceeding $1,000.00 in value and kept by such person as a homestead shall be exempt from attachment and execution "except as hereinafter provided."

█ The homestead right is a right to be set out of the estate of

364

the husband or head of the family and is treated as an exemption of so much of his estate as is included within it, for the benfit of his widow after his decease. It does not become a fixed and definite estate in the land until it is ascertained and set out. Before it is ascertained and set out, it is nothing more than a contingent or inchoate right—a conditional lien or encumbrance—upon the estate of the husband in favor of his wife. *McElroy* v. *Bixby, Admr,* 36 Vt 254, 260.

The homestead interest vests no title during the lifetime of the husband but is only a contingent and inchoate right which, if not released or otherwise barred, may be enforced if the wife survives him. *Proulx* v. *Parrow,* 115 Vt 232, 242, 56 A2d 623.

The homestead law does not vest any title to the homestead in the wife of the general and legal owner, during his life-time, but only a contingent and inchoate right which, if she do not release, by joining in a conveyance or otherwise become barred by operation of law, she may enforce, after his death, even though he may have conveyed it away absolutely in his lifetime. *Davis* v. *Andrews,* 30 Vt 678-681.

During the life of the husband it is the husband's right of homestead and not the right of the wife. *Davis* v. *Andrews, supra.*

V. S. 47, § 2619, provides: "A homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, unless the wife or husband joins in the execution and acknowledgment of such conveyance. A conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead provided for in this chapter."

In *Abell* v. *Lothrop,* 47 Vt 375 at pages 379 and 380, the court, in discussing the effect of the sole deed of the husband to the homestead interest, uses the following language: "The act now in force, and which governs this case * * * provides, in substance, that no homestead, nor any interest therein, shall be conveyed by the husband, and that his sole deed shall be wholly inoperative to convey any interest in the homestead. Surely, no more explicit language could be used to negative the right of the husband to convey either his own or his family's interest in the homestead. His deed is absolutely void—he has no capacity to deed—and the title to the estate remains as if no deed were executed. This being so, no title whatever to or

interest in the homestead * * * passed to Curtis under his mortgage."

*Abell* v. *Lothrop, supra,* is explained in *Whiteman* v. *Field,* 53 Vt 554 at page 558, where the court, in discussing the sole deed of a husband said : "All that the court was called upon to decide and all that it was intended to decide was that such a deed was voidable at the instance of any person who had a homestead interest in the premises attempted to be conveyed by it." Followed in *In Re Hatch's Estate,* 62 Vt 300-302, 18 A 814.

*Thorp* v. *Thorp,* 70 Vt 46, 50, 39 A 245, 246 : "The wife's right in such premises (the homestead right) is inchoate during the husband's life and ripens into an absolute right on his decease. When the inchoate right once attaches in favor of the wife, the husband cannot convey it by his sole deed. * * * We think it does not mean to deprive him from selling or mortgaging the overplus, so long as he leaves the dwelling house, outbuildings and land used in connection therewith, of sufficient value to answer the demands of the statute both at the time of the conveyance and at the time the homestead may become vested in his widow."

*Martin* v. *Harrington,* 73 Vt 193, 199, 50 A 1074, 1076 : "We hold that the deed, so far as the homestead was concerned, was inoperative to convey any interest therein."

■ While it is apparent from the foregoing that Cole still had a homestead in the property in Corinth and to which he would be entitled to possession, whether or not the trial judge would put the wife into possession, pending the determination of the divorce case, was a matter solely within his discretion. An abuse of discretion is not shown.

■ V. S. 47, §§ 2622 to 2630 provide the procedure to be followed in effecting the severance and sale of the homestead during the lifetime of the husband and wife. From an examination of these provisions it is obvious that a superior judge acting on an application for temporary alimony is not vested with jurisdiction to determine the matter.

In *Canfield* v. *Hard,* 58 Vt 217, 227, 2 A 136, which was an action in ejectment involving homestead property, it was held that the determination of the excess over the exemption by the jury was not feasible. And in *Pease, Admr* v. *Shirlock,* 63 Vt 622, 628, 22 A 661, 663, it is held that where the homestead is uneliminated from the other real estate "we are unable to see how ejectment or any other action at law can meet the exigencies of the case. By a pro-

ceeding in equity, a part of the land could be sequestered and sold."

Petitioner argues that Cole's sole conveyance was within the statute against fraudulent conveyances and therefore void as to her.

V. S. 47, § 8335 provides that "Fraudulent and deceitful conveyances * * * made or had to avoid a right, debt or duty of another person, shall, as against the party only whose right, debt or duty is attempted to be avoided * * * be null and void."

In *Nichols* v. *Nichols,* 61 Vt 426, 430, 18 A 153, it is held that a wife has a tangible and valuable interest in the estate of her husband of which she cannot be deprived by the fraudulent conveyance of her husband.

In *Leach* v. *Francis* (and *Francis* v. *Leach*), 41 Vt 670, 674, the rule is laid down that to render a sale of property void as to creditors both the vendor and vendee must participate in the intent to delay the creditors of the vendor at least to the extent of the vendee's having knowledge of such intent on the part of the vendor.

Speaking generally, to make a conveyance for a valuable consideration fraudulent, there must be a fraudulent intent both on the part of the grantor and grantee. *Ludlow Savings Bank & Trust Co.* v. *Knight,* 92 Vt 171, 173, 102 A 51, 2 ALR 1433. And in *Wilson* v. *Spear,* 68 Vt 145, 148, 34 A 429, it is held that it is only when there is a valuable consideration that fraud on the part of the grantee is essential.

A bona fide purchaser for full value is protected. *Kelsey* v. *Kelley,* 63 Vt 41, 51, 22 A 597, 13 LRA 640.

An examination of the findings discloses that the Parsons paid $5,221.00 for the property they received; that they bought in good faith and without any knowledge of homestead rights and of any court order respecting the premises; that they were in all respects bona fide purchasers. There is no question but that Cole sought to defraud and deprive his wife of her rights in the real estate.

These findings negate any fraudulent intent on the part of the Parsons and their purchase except as to the homestead right is protected under the holding in *Kelsey* v. *Kelley, supra.*

Petitioner filed eleven requests for findings which were not made by the court, to which failure to find she excepts.

The exceptions to requests Nos. 1 to 9 inclusive are too general to require consideration. The only ground urged is that "Each of the requests is fully supported by the evidence as indicated. In view of the action of the court in deferring the setting out

of the homestead she is entitled to these findings as requested." An exception to a failure to find as requested merely on the ground that it is supported by the uncontradicted evidence without pointing out why or how the facts requested are material, is not available here. *White* v. *Hight,* 112 Vt 420, 421, 26 A2d 86 ; *Holton Estate* v. *Ellis,* 114 Vt 471, 484, 49 A2d 210. Where no particular fault is indicated the exception is too general to be available. *Little* v. *Loud,* 112 Vt 299, 302, 23 A2d 628.

 Petitioner in her eleventh request to find asks the court to report exceptions to the evidence in his findings of fact. There is no duty on the court to report such exceptions and the request being unsound in part it was not error to ignore the whole. *McClary* v. *Hubbard,* 97 Vt 222, 240, 122 A 469 ; *Peck* v. *City Trust Company,* 104 Vt 20, 29, 156 A 403 ; *Holton Estate* v. *Ellis,* 114 Vt 471, 483, 49 A2d 210.

Petitionees except to those parts of Findings numbered 31, 32, 37 and 38, which find that the conveyance of Mr. Cole was void and inoperative so far as it relates to the homestead right of Valma. While technically these findings are incorrect in as much as the homestead right is in Cole, what we have said with respect to petitioner's exceptions relating to the same subject matter renders them harmless.

*Exceptions overruled. Cause remanded for further proceedings not inconsistent with the views expressed in this opinion.*