**CHARTER ONE BANK v. ESTATE OF Phillip H. SPILLANE, Department of Taxes and Mary K. Spillane**

[807 A.2d 452]

No. 01-228

August 14, 2002. This is an interlocutory appeal from an order granting summary judgment to plaintiff Charter One Bank against intervenor Mary K. Spillane. Mary Spillane is the widow and second wife of Phillip Spillane. She intervened in this foreclosure action to assert her homestead rights in the real estate being foreclosed by Charter One Bank. The foreclosure was brought because of a default in payments on a home equity line of credit taken out by Phillip Spillane and his first wife, Janice, now deceased. Mary's claim is that her homestead interest should take priority over Charter One's interest because the advances under the home equity line of credit, whether taken during Phillip's first or second marriage, were not perfected because the spouses failed to consent to the advances. We affirm.

The stipulated facts show that Phillip and Janice borrowed $38,500 from the Marble Bank (Charter One has succeeded to its interest) in 1987 secured by a nonpurchase money mortgage on their home and also securing any future ad-

vances made under the line of credit. Janice died in 1988, and in 1990 Phillip married Mary. Although the entire history of the loan advances is not clear, advances were made, and the last advance was made on October 3, 1994. Phillip and Mary were divorced in February 1995, and the property was awarded to Phillip. Phillip and Mary then remarried in April 1998, and Phillip died on March 5, 1999. Mary occupied the real estate during her first and second marriages to Phillip. Mary has not signed any written consents to advances under the loan agreement. The interest asserted here by Mary is to protect her homestead rights. She has no title interest in the property. The principal amount in default is $26,040.49 exclusive of attorney's fees.

The trial court held that Charter One was entitled to summary judgment because Mary's inchoate homestead rights were extinguished at the time of her divorce from Phillip in 1995, after the last advance had been made on the loan. The trial court reasoned that, if there were defects in advances, those defects were cured by the divorce, and Mary's subsequent remarriage to Phillip entitled her only to the interest Phillip had when he died. That interest, the trial court held, was properly subject to the interest of the bank, which was fully secured by the mortgage prior to the date of the second marriage in 1998.

On appeal, Mary assigns numerous claims of error, but the centerpiece of her argument is that none of the advances made to Phillip during his first or his second marriage was perfected because of lack of consent by the spouses; therefore, she argues, the liens are void pursuant to 27 V.S.A. § 141(b). Section 141(b) is a part of the homestead statutes and provides as follows:

> When a mortgagee takes an accruing mortgage, the only debt which shall be secured thereby or become a lien upon the property described therein shall be the debt described in the mortgage and existing at the time of its execution, and any subsequent direct indebtedness of the mortgagor to such mortgagee; provided, that when the mortgage includes a homestead, the written consent of the wife or husband of the mortgagor to the creation of such subsequent direct indebtedness shall be required.

Another statute, 8 V.S.A. § 1207, repealed effective January 2001, but in effect at the time of the events herein, also required that if the property included a homestead of a spouse, the mortgage and any future advances must have the written consent of the spouse.

We agree with the trial court that the liens created by the advances are not void, regardless of a lack of consent by Janice or Mary, because the liens created without their consent are voidable, and not void ab initio. As such, the liens could be affected by subsequent events that extinguished the inchoate homestead rights of Janice, by death before Phillip, and of Mary, by divorce. See *Estate of Girard v. Laird*, 159 Vt. 508, 517, 621 A.2d 1265, 1270 (1993) (homestead interest voluntarily relinquished in divorce cannot be enforced thereafter and overruling contrary rule of *Martin v. Harrington*, 73 Vt. 193, 50 A. 1074 (1901)); *Condosta v. Condosta*, 142 Vt. 117, 122, 453 A.2d 1128, 1130 (1982) (final divorce order terminates a homestead right and cures any defects in conveyance to bonà fide purchaser); *Cole v. Cole*, 117 Vt. 354, 366, 91 A.2d 819, 826 (1952) (bona fide purchasers for value without notice were protected over wife in divorce proceeding).

It is important to our resolution of this case to understand the nature of the right asserted by Mary. As we stated in *Cole*, the homestead right is:

treated as an exemption of so much of [the husband's] estate as is included within it . . . . It does not become a fixed and definite estate in the land until it is ascertained . . . . Before it is ascertained . . ., it is nothing more than a contingent or inchoate right — a conditional lien or encumbrance — upon the estate of the husband in favor of his wife. . . .

The homestead interest vests no title during the lifetime of the husband but is only a contingent and inchoate right which, if not released or otherwise barred, may be enforced if the wife survives him.

117 Vt. at 364, 91 A.2d at 824-25. In accord with our prior cases, Mary did not have a claim of homestead until the death of decedent. Her assertion now of irregularities in the transactions that occurred during her first marriage to Phillip should have been raised prior to her divorce when she still had an inchoate interest. Once that interest was extinguished by divorce, the conveyance was no longer voidable under *Estate of Girard*. Indeed, if we were to adopt Mary's argument, we would be returning to the holding of *Martin*, which was overruled in *Estate of Girard*. See 159 Vt. at 517, 621 A.2d at 1270. Mary argues there are distinguishing facts in *Estate of Girard*, but they are not relevant to the general concept applicable here that Mary's inchoate interest was lost. The same reasoning applies to any debts incurred during Phillip's marriage to his first wife, Janice. Janice's homestead rights were extinguished when she died, and therefore, any irregularities in the transactions requiring her signature were cured.

Mary's homestead claim, then, must be considered from the date when she remarried Phillip in April 1998. At that time, all the advances under the loan had already taken place. Her interest is derivative, see 27 V.S.A. § 105, and therefore only as good as Phillip's interest, which the trial court found, and we agree, was limited by the mortgage. As the statute provides, the homestead statutes protect the surviving spouse's interest against attachments and executions from creditors, but they do not protect against voluntary secured interests, which is the character of the mortgage here. See *id.* Therefore, debts legally charged within the lifetime of the decedent take priority over homestead interests, and the trial court's decision must be affirmed. See *id.*

Mary's second issue relates to a controversy over discovery. Mary sought the specific history of the advances made, and the bank has apparently lost much of the material. In view of our decision on Mary's homestead rights, however, the discovery requested is no longer relevant, and the issue is moot.

*Affirmed.*