Rose W. Shain *vs.* Mark Shain.

Norfolk.    May 3, 1949. — September 16, 1949.

Present: Qua, C.J., Lummus, Spalding, & Williams, JJ.

*Marriage and Divorce*, Jurisdiction, Foreign divorce. *Jurisdiction*, Divorce proceedings. *Domicil. Husband and Wife*, Separate support. *Estoppel. Constitutional Law*, Full faith and credit. *Words*, "Without delay."

It is a jurisdictional prerequisite to any decree for separate support under G. L. (Ter. Ed.) c. 209, § 32, that the parties to the proceeding be married; such a proceeding could not be maintained against a man who had been granted a valid divorce from the petitioner by a court in the State of Nevada.

A wife was not estopped to attack collaterally in Massachusetts the jurisdiction of a Nevada court to grant a divorce against her where she was served in Massachusetts by substituted service in the Nevada proceeding but did not appear nor participate in any way in that proceeding.

Compliance with the jurisdictional residence requirements for divorce of Nevada Compiled Laws (1929), § 6405, and Nevada Compiled Laws 1931–1941, Supplement, § 9460, was shown by findings that a husband, after acquiring a domicil in Nevada, remained physically present there for more than six weeks, that thereupon, at the suggestion of his physician and for the purpose of improving his health, which was poor, he left Nevada and travelled for more than seven months and that he then returned to Nevada and about two weeks later commenced a proceeding for divorce, and by a conclusion, not inconsistent with the subsidiary findings, that his absence from Nevada "was expedient, and that on and after . . . [the date of his departure following his six weeks residence he] intended in good faith to return to . . . [Nevada] without delay, and to continue his residence therein."

PETITION, filed on December 19, 1931, in the Probate Court for the county of Suffolk and on December 21, 1938, transferred to the Probate Court for the county of Norfolk under G. L. (Ter. Ed.) c. 215, § 8A.

The case was heard by *Reynolds,* J.

*J. P. Sullivan,* for the petitioner.

*F. W. Mansfield,* (*A. Hurwitz* with him,) for the respondent.

Qua, C.J.   This is a petition for separate support under G. L. (Ter. Ed.) c. 209, § 32.   The husband pleaded to the jurisdiction a decree of divorce granted to him in Nevada on August 12, 1941.   The judge of probate sustained the plea and dismissed the petition.   The case is here on the wife's appeal, with detailed findings of material facts by the judge, including exemplified copies of the Nevada proceedings, but without the evidence heard by the judge here.

Under our law it is a jurisdictional prerequisite to any decree for separate support under § 32 that the parties be married.   *Rosa* v. *Rosa,* 296 Mass. 271, 272.   *Cohen* v. *Cohen,* 319 Mass. 31, 34.   *Heard* v. *Heard,* 323 Mass. 357, 361.   It follows that if the Nevada divorce was valid the plea was rightly sustained.   The question is the validity of the Nevada divorce.

The wife, who continued to reside in this Commonwealth since the husband left in 1931, did not appear in, or take any part in, the Nevada proceedings.   She was served only by substituted service in this Commonwealth.   Jurisdiction of the State of Nevada to grant the divorce therefore depended upon the husband's having acquired a domicil in Nevada.   *Rubinstein* v. *Rubinstein,* 319 Mass. 568, 571.   *Coe* v. *Coe,* 320 Mass. 295.   *Bell* v. *Bell,* 181 U. S. 175.   *Williams* v. *North Carolina,* 325 U. S. 226, 229.   The wife could attack the Nevada decree by showing that the husband had not acquired in fact a domicil in Nevada.   *Cohen* v. *Cohen,* 319 Mass. 31, 34–35.   *Heard* v. *Heard,* 323 Mass. 357, 363.   *Williams* v. *North Carolina,* 325 U. S. 226.   *Rice* v. *Rice,* 336 U. S. 674.   Compare *Sherrer* v. *Sherrer,* 334 U. S. 343; *Coe* v. *Coe,* 334 U. S. 378.   She has made this attack, but has been unsuccessful in it, since the trial judge here has found, with ample and consistent subsidiary findings, that on September 6, 1940, nearly ten months before the husband filed his suit for divorce in Nevada, he had

arrived at Reno with the intention of establishing his domicil there and so had acquired a domicil which he has since retained. This finding does not now appear to be challenged.

But although the State of Nevada acquired jurisdiction to grant a divorce by reason of the domicil of the husband, there are certain additional requirements of the Nevada statutes relative to length and continuity of residence which the wife insists were not complied with, so that, as she contends, the Nevada court had no jurisdiction to grant a divorce in the circumstances existing in this instance, even if the husband was domiciled in Nevada. If under Nevada law these requirements were jurisdictional in their nature, and were not complied with, it is possible that the Nevada decree would be void in Nevada and subject to collateral attack there by the wife, who never actually became a party to the Nevada proceedings. Restatement: Judgments, §§ 5, 7–12, and comments. Comparable provisions of our own statutes are regarded as jurisdictional. *Old Colony Trust Co.* v. *Porter, ante,* 581, 585. The decision in *Confer* v. *District Court,* 49 Nev. 18, may tend against the allowance of collateral attack in Nevada, but in that case the wife appeared and contested the granting of the divorce. And see *Fleming* v. *Fleming,* 36 Nev. 135, 142. At any rate, for the purposes of this decision, we assume in favor of the wife that the statutory requirements are jurisdictional in Nevada, and that failure to comply with them would leave the divorce void and subject to collateral attack there, and so also here.

The provisions of the Nevada statutes to which we refer are these:

Nevada Compiled Laws, 1929, § 6405: "The legal residence of a person with reference to his or her right of suffrage, eligibility to office, right of naturalization, right to maintain or defend any suit at law or in equity, or any other right dependent on residence, is that place where he or she shall have been actually, physically and corporeally present within the state or county, as the case may be,

during all of the period for which residence is claimed by him or her; provided, however, should any person absent himself from the jurisdiction of his residence with the intention in good faith to return without delay and continue his residence, the time of such absence shall not be considered in determining the fact of such residence." Nevada Compiled Laws, 1931–1941 Supplement, § 9460: "Divorce from the bonds of matrimony may be obtained by complaint, under oath, to the district court of any county in which the cause therefor shall have accrued, or in which the defendant shall reside or be found, or in which the plaintiff shall reside, or in which the parties last cohabited, or if plaintiff shall have resided six weeks in the state before suit be brought, for the following causes, or any other causes provided by law: . . . ."

The trial judge here found that after the husband acquired a domicil at Reno on September 6, 1940, he remained actually, physically, and corporeally present there, without absence, for more than six weeks thereafter. At the end of that period of six weeks he had satisfied the residence requirements of the statutes quoted above and could have filed his suit for divorce at once. Instead of doing this, however, he delayed filing his suit until July 2, 1941, but did not give up his residence in Reno, or establish a domicil elsewhere. During that interval, at the suggestion of his physicians, he left Reno on November 1, 1940, and, except for a day or "a few days" in Nevada on three occasions, travelled and visited extensively in southern California, Florida, and Cuba. His health was poor and he travelled for the purpose of improving it. He had been advised to seek a warm climate. The winters in Reno were too cold for him. During his absence he met with an accident which incapacitated him for a period not definitely stated. He returned to Reno on June 18, 1941, and began his divorce proceeding on July 2 of that year. The judge here found "on all the evidence" that the husband's absence from Reno between November 1, 1940, and June 18, 1941, "was expedient, and that on and after November 1, 1940,

Shain intended in good faith to return to Reno without delay, and to continue his residence therein." The evidence on which this finding was made is not before us. The finding is not necessarily inconsistent with the subsidiary findings. It must stand. It brings the case within the proviso contained in § 6405, and shows that the residence requirements of the Nevada statutes were in truth complied with.

Several Nevada decisions have been cited to us. The nearest in point seems to be *Fleming* v. *Fleming,* 36 Nev. 135. In that case the court held that the nature of the plaintiff's employment away from his residence was such that he could not have intended to return "without delay," and that in the circumstances the proviso in the statute would not warrant an absence of three months. See, however, *Lamb* v. *Lamb,* 57 Nev. 421. In the present case we have an affirmative finding of intention in good faith to return without delay. It would seem that the words "without delay" must be construed with considerable flexibility and with some reference to the reasons for absence. One in search of health might actually "absent himself" for considerable periods and still entertain an "intention in good faith to return without delay."

*Decree affirmed.*