# Eleanore M. Loeb v. William Loeb

[114 A2d 518]

February Term, 1955.

Present: Cleary, Adams and Chase, JJ., and Hulburd and Sylvester, Supr., JJ.

Opinion Filed May 3, 1955.

474

*Gannett & Oakes* and *Harold I. O'Brien* for the petitioner.

*A. Luke Crispe* and *Orrin B. Hughes* (*Ralph Chapman* on the brief) for the petitionee.

**Adams, J.** This cause involves the care, custody, support and maintenance of the minor child of the parties, the support of the petitioner and the awarding of counsel fees and disbursements in connection with the litigation. It was heard by the court, findings of fact were made and filed and a judgment order entered. It awarded the care, custody and control of the minor child to the petitioner, ordered the petitionee to pay to the petitioner $450 each month toward the care, support and maintenance of the minor child, $350 each month for the support of the petitioner, $5,000 to the attorneys for the petitioner for counsel fees and the sum of $1,289.39 to said attorneys for their disbursements. The case is here on exceptions to certain findings and to the judgment order on behalf of both parties.

It will be helpful and seems to be necessary to review the pleadings before we discuss the case and consider the questions involved.

The petitioner brought her petition to the Windham County Court setting forth therein that in 1942 she and the

petitionee were married and had been ever since husband and wife and had been for some time living separate and apart; that there had been one child, Katherine Penelope Loeb, born of said marriage in 1948; that said minor child had always lived with the petitioner and was then living with her at her home in South Windham, Vermont; that the petitionee had no residence in Vermont and could not be located at his last known residence in Manchester, N. H. The prayer of the petition was that under the provisions of V. S. 47, sections 3253 and 3254 as amended, the court order and decree that the care and custody of said minor child be committed and entrusted to the petitioner during the remainder of the minority of said child. The petition is dated November 15th, 1952.

The petitionee through his attorney entered a special appearance and filed a motion to dismiss the petition. The grounds of the motion were that the petitionee was divorced from the petitioner by virtue of a decree of the Second Judicial District Court of the state of Nevada on the 11th day of July 1952, wherein the petitionee was granted a final and absolute divorce from the petitioner; that at that time the petitionee was and still is a bona fide resident of the state of Nevada and that the petition could not be maintained for the reason that the petitionee and petitioner are no longer husband and wife as alleged in the petition and as required by V. S. 47, §3253.

Later the petitionee waived his special appearance and filed an answer setting forth therein the same matters alleged in the motion and asking for judgment in his favor. He also filed with the answer a cross petition in which he set forth with more particularity his divorce in Nevada from the petitioner; the facts in regard to his bona fide residence therein; a subsequent marriage there; his purchase of a home in Reno and his intention to continue to reside in Nevada; the suitability of his home and other advantages there for the minor child. He then asked the court to grant him custody of the minor child during the school year and the right to visit and have her with him at reasonable times and places.

The petitioner filed a replication to the petitionee's answer. In that she denied the validity of the petitionee's Nevada divorce; alleged that it was not entitled to full faith

and credit in Vermont; that she was not personally served with the process in Vermont; that she did not in any way appear in the Nevada proceedings and that the court there had no jurisdiction over her. She further alleged that the petitionee had no intention of establishing a bona fide residence in Nevada; that he falsely stated in the Nevada proceedings that he was a bona fide resident of that state and intended to remain there permanently and that he obtained his Nevada divorce by deceiving the court in regard to his domicile and that whether or not the Nevada divorce is binding, the court in which her petition is pending had jurisdiction to make an order and decree concerning the care, custody, maintenance and education of the minor child.

The petitioner also filed what she denominated an answer to the petitionee's cross-petition. In that she denied the same matters that she denied in her replication, neither admitted or denied some of the allegations of the cross-petition; denied that it would be for the best interests of the child that the petitionee have her custody at any time and alleged various facts pertinent to that allegation concerning the petitionee, his home and its nature. She then alleged that the petitionee had substantial financial means and was well able to provide adequate and complete support for the petitioner and the child. The answer concluded with a prayer for further relief and also that the court (1) make a suitable and proper order for the support of the child, (2) a suitable and proper order for the support of the petitioner and (3) an order awarding the petitioner a suitable sum as counsel fees, she being without funds to finance the litigation. It should be noted that here for the first time did the petitioner in this so-called answer allege anything about the petitionee's financial means or ability to provide support for the child and the petitioner. Here for the first time is there any specific prayer for an order for the support of either the child or the petitioner or for counsel fees.

The petitionee filed a replication to the petitioner's answer. In that he relied on his Nevada divorce and again alleged that it was entitled to full faith and credit in Vermont. He then denied the allegations of the answer and further by way of defense to the matters set forth in the answer he alleged

that because he had procured a valid divorce from the petitioner the court did not have jurisdiction to award the petitioner any sum for support and that the proceedings instituted by the petitioner under statutory authority did not provide for the remedy sought in her answer to the petitionee's cross-petition.

It has not been called to our attention that the petitionee raised below nor does he here raise any question in regard to the right of the petitioner, after having obtained jurisdiction over the petitionee by his general appearance on her petition for custody of the child, to enlarge this original matter then pending by a prayer for support for herself which she included in her answer to the petitionee's cross-petition relating to the custody of the child.

V. S. 47, §3253 reads as follows: "When parents of minor children are living separately, on petition of either parent, the county court may make such decree concerning the care, custody, maintenance and education of the children, as in cases where the court grants a divorce. Thereafter, on the petition of either of the parents, such court may annul, vary or modify such decrees." Section 3254 as amended has to do with the summons and service thereof and is not here material.

The petitionee does not brief the point and he conceded in oral argument that the Windham County Court had, by virtue of the foregoing statute and the general appearance of the petitionee, jurisdiction to make a decree concerning the care, custody and support of the minor child of the parties.

Both parties in their briefs claim certain questions are not before the court because of the record or by failure to brief. A careful examination of the record called to our attention and a thorough study of the original and reply briefs satisfies us that the parties have raised and presented for our consideration the following questions: (1) The validity of the divorce procured in Nevada by the petitionee. (2) The jurisdiction of the court to make an order for the support of the petitioner. (3) The reasonableness of the award made for the support of the petitioner. (4) The reasonableness of the award for the support of the minor child. (5) Did the court err in making

the award to take effect from April 1st 1954 only? (6) The right of the court to award attorney's fees and disbursements. (7) Should the motion of the petitionee to strike the judgment. order have been granted?

 Under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicile. *Williams* v. *North Carolina*, 325 US 226, 65 S Ct 1092, 89 L Ed 1577, 157 ALR 1366; *Shain* v. *Shain*, 324 Mass 603, 88 NE2d 143. In the instant case, the petitioner by her pleadings raised the question of the bona fide residence and domicile of the petitionee in Nevada at the time he procured his divorce there. However, the trial court found that since the petitionee first went to Nevada in April 1952 he had maintained no other residence except in that state; that he had purchased a home there and "is presently living * * * at said address." The findings also show that the Nevada court when it granted the divorce found as a fact that the petitionee, the petitioner there, for the required period of time prior to the commencement of the action, "Continuously had been and still and now is an actual and bona fide resident of, domiciled within and physically present within the State of Nevada, with the intention to remain indefinitely and to make Nevada his home for an indefinite period of time." The petitioner excepted to some of the findings in regard to the residence and domicile of the petitionee in Nevada but she does not brief them so they are waived. *Strout* v. *Wooster*, 118 Vt 66, 71, 99 A2d 689, and cases cited. In fact, nowhere in her brief does the petitioner question the matter of residence and domicile of the petitionee in Nevada. It is, therefore, conclusively established for the purposes of this case.

The petitioner claims that the petition for the Nevada divorce was not properly served on her in Vermont as provided by the Nevada law. The trial court did not set forth in the findings or find the Nevada law as a fact. It did set forth in its findings considerable testimony of the petitioner in regard to the service on her. The substance of this is that the petitioner was at home when the officer called but she did not open the screen door; that the officer left the papers on the

terrace outside the screen door at her home; that she then called her lawyer and upon his instructions she then went out, picked up the papers and mailed them to that lawyer. The court then found that she knew the contents of the papers. The findings also state that the Nevada court, "found in its decree that 'it appeared to the satisfaction of the court, that the defendant, Eleanore McAllister Loeb, was regularly served with process on the 10th day of June 1952, in the City of Windham, County of Windham, State of Vermont and has failed within the legal time allowed for demurrer or answer to demur or answer to the complaint of the plaintiff on file, and that the default of said defendant has been duly and regularly entered as required by law.' " It is presumed that the Nevada court when it made that finding did so in accordance with the Nevada law.

The full faith and credit clause of the Federal Constitution requires the extra-territorial recognition of the validity of a divorce decree obtained in accordance with the requirement of procedural due process in the state by the spouse who under the law of such state had acquired a bona fide domicile there, although the spouse who remained in the state of the original matrimonial domicile did not appear in the divorce suit and was not served with process in the state in which the divorce was granted. *Williams* v. *North Carolina*, 317 US 287, 63 S CT 207, 87 L Ed 279.

The burden of undermining the decree of a sister state "rests heavily upon the assailant." *Williams* v. *North Carolina*, 325 US 226, 234, 65 S CT 1092; 89 L Ed 1577; *Esenwein* v. *Commonwealth*, 325 US 279, 280-281, 65 S CT 1118, 89 L Ed 1608. The judgment of the Nevada court, it appearing to be a court of general jurisdiction, presumes jurisdiction over the subject matter and over the persons unless disproved by extrinsic evidence, or by the record itself. *Cook* v. *Cook*, 324 US 126, 72 S CT 157, 96 L Ed 146. We find nothing in the evidence or findings here which disproves that the petitioner, the defendant in the Nevada proceedings, was "regularly served with process" as found by the Nevada court.

The exceptions of the petitioner to the findings and conclusion of the trial court, wherein it found that the petitionee and petitioner were legally divorced by decree of the second Judicial District Court of the state of Nevada within and for the County of Washoe dated the 11th day of July 1952 and that as of that date they were no longer husband and wife, and to the judgment order generally in that regard and particularly to that part of the judgment order wherein it is stated that the petitioner "has not met the required burden of proof arising from the presumption of jurisdiction to grant the divorce to the petitionee" and that "the Nevada divorce decree is entitled to recognition in this state in this proceeding under the full faith and credit clause of the Federal Constitution" are not sustained.

Did the Windham County Court have jursidiction to award support to the petitioner? The parties disagree sharply on this question. The petitionee claims that the court had no jurisdiction either statutory or otherwise to make such an award and he raises that question by his exceptions to some of the findings and to paragraph 3 of the judgment order wherein such an award is made. The petitioner claims that the court had jurisdiction both under the statute and at common law to make the award. For statutory authority she relies upon V. S. 47, §3256, the pertinent parts of which read as follows: "When the husband without just cause fails to furnish suitable support for his wife, or has deserted her, or when the wife, for a justifiable cause, is actually living apart from the husband, on petition of the wife * * * the county court, by its order may prohibit the husband from imposing restraint on her personal liberty * * *. Upon the application of the husband or wife * * * such court may make such orders as it deems expedient concerning the support of the wife and the care, custody, education and maintenance of the minor children of the parties. It * * * thereafter, from time to time, on similar application, may revise or alter such order, or make a new order or decree as the case requires."

The parties have called our attention to no case in this state, nor do we know of any, involving the right of a former wife after a valid divorce in this state or in another jurisdiction

to bring a petition for support under this section of the statute. It was enacted as No. 33, §1 of the Acts of 1890 in substantially its present form. This Court in *Morse* v. *Morse*, 65 Vt 112, decided in 1893, at page 114, 26 A 528, said, "This statute introduces a new and important element into the law of domestic relations in this state." There the petition was brought under the statute by the wife and this Court further said, "* * * * it is manifest that she does not intend to return, but coerce support in continued separation."

The petitioner relies on *Estin* v. *Estin*, 334 US 541, 68 S Ct 1213, 92 L Ed 1561, and our own case of *Morris* v. *Morris*, 118 Vt 270, 108 A2d 258. They are both distinguishable from the present case and are not in point here. Both had to do with judgments in favor of the wife awarding support or alimony in separation or limited divorce proceedings rendered prior to the ex parte divorce granted to the husband in Nevada.

There is a long and exhaustive annotation pertaining to the right to alimony or support after an ex parte divorce on constructive service in 28 ALR 2d, 1376-1419. From that it appears that the authorities are divided as to whether the suit of a former wife for alimony or support may be maintained, notwithstanding a valid foreign divorce decree. The cases from various jurisdictions to the point are cited and commented on. An exhaustive reading of the cases cited in the annotation indicates that the results have depended on many factors, the statutes, whether or not the application is in equity, whether or not the application asks for a divorce, fraud in procuring the divorce or property of the husband in the state of matrimonial domicile, to mention a few. Because of the many and varying reasons advanced, only those cases in states that have statutes similar to our own are of any particular help.

We quote from the opinion in *Todd* v. *Policemen's and Firemen's Pension Fund*, 14 NJ Super 508, 82 A2d 233, 235. "The jurisdiction of our courts to award maintenance is statutory. R. S. 2:50-39 as amended, P. L. 1948, c. 320, NJJ. S. A.; [citations omitted]. This statute is applicable only where the relationship of husband and wife exists, and a decree of absolute divorce, legally obtained, dissolves such

relationship, thereby terminating the wife's right to thereafter sue for separate maintenance." There the matrimonial domicile was in New Jersey and the husband had obtained a divorce in Texas. An examination of this statute shows that it is nearly identical with our sec. 3256. It should also be noted that New Jersey has a statute which provided that after a divorce obtained in New Jersey or elsewhere, the Court of Chancery may make an order touching alimony for the wife and also regarding the care, custody, education and maintenance of the children.

In *Shain* v. *Shain, supra*, 324 Mass 603, 88 NE 2d 143, which was a petition brought by a former wife for separate maintenance under the Massachusetts statute, GL (Ter. Ed.) c. 209, §32 which is substantially like our sec. 3256 and where the former husband pleaded a Nevada divorce, the court said, "Under our law it is a jurisdictional prerequisite to a decree for separate support under §32 that the parties be married."

It is plain that by the provisions of our statute the legislature was concerned with the rights and duties of the husband and wife, as such. It speaks of the husband supporting his wife or deserting her or the wife living apart from her husband. Also on petition of the wife, the court may prohibit the husband from imposing restraint on her personal liberty. An application for that and an order to that effect would hardly be proper after they were no longer husband and wife. Also on application of the husband or wife orders may be made concerning the care, custody, education and maintenance of minor children, as distinguished from §3253 where it is said that such orders may be made on application by either parent.

■ We are not impressed with the reasoning of the court in *Cox* v. *Cox*, 19 Ohio St. 502, heavily relied on by the petitioner. There the husband had been granted a valid divorce in another jurisdiction, then on petition of the former wife, the Ohio court granted a divorce and alimony, saying in effect that where the statute spoke of an allowance being made to the "wife" it was designating the person and not the actual existing relation. We take the view that if the marriage has been dissolved by a valid divorce there is no longer any "wife".

The questions might be asked: Is alimony or support incidental to a divorce or a divorce incidental to alimony or support? Why use the fiction of granting a second divorce in order to award alimony?

■ The petitioner stresses the unfairness to the wife if the law is such that it allows a husband to abandon his wife in the state of their matrimonial domicile, obtain an easy divorce in another state and leave her without remedy for her support. Our sole function is to construe the statute with the purpose of ascertaining and giving effect to the intention of the legislature. *In re Estate of Cooke*, 117 Vt 336, 338, 91 A2d 683. Furthermore, the argument loses its force unless there is personal service on the errant husband within the jurisdiction if any order is to be effective against him personally.

■ The petitioner claims that the Nevada divorce, although granted there on July 11, 1952, does not become effective in Vermont until it is held by the Vermont court that it was legally granted, and thus the parties were still husband and wife when she brought her petition in the instant case. She relies upon a sentence in the Williams case, *supra*, 325 US 226, 65 S Ct 1092, 1095, 89 L Ed 1577, "To give it the form of a judgment in another state, it must be made a judgment there." A reading of the full opinion in that case satisfies us that it is not a new judgment in the sister state but only a recognition of the validity of the original judgment; that is, a recognition of something that already exists; and it is effective as of its original date. To hold otherwise and as claimed by the petitioner would result in the parties who were legally divorced in Nevada still being husband and wife in every other state until each state had by its own decree recognized the Nevada decree as valid. In *Rosa* v. *Rosa*, 296 Mass 271, 5 NE 2d 417, it was held that the relation of husband and wife ceased to exist on the entry of the final decree in Rhode Island. That is the situation here, the relation of husband and wife ceased upon entry of the Nevada decree there on July 11, 1952.

■ The dissolution of the marriage relation, as by the death of the husband or by a decree of divorce, terminates the wife's right to an award of separate maintenance. The

dissolution of the marriage relation extinguishes the subject matter which forms the basis of the action or proceeding for separate maintenance. 42 CJS Husband and Wife, §612 [a] 207.

■ We are satisfied and hold that the jurisdiction to award support to the petitioner under §3256 applies only when the relationship of husband and wife exists and that the petitioner cannot maintain her petition here under that section. To the same effect among other cases in addition to the ones heretofore cited are *Thompson* v. *Thompson*, 226 US 551, 33 S Ct 129, 57 L Ed 347; *Calhoun* v. *Calhoun*, Cal App, 160 P2d 923, and see anno. 28 ALR2d §8, p. 1402.

■ The petitioner further claims that the court had power irrespective of §3256, under the common law to grant support to her. The answer to that lies in the fact that the proceeding here is a petition for separate support and not for a divorce or annulment. Actions for separate support or maintenance and action for divorce differ from each other in that the latter is one for dissolution of the marriage, while the former is one in affirmance of it and to enforce the obligations of that relation. 17 Am Jur. Divorce & Separation, §4, p. 148.

To understand the principle of divorce and separate support or maintenance and the jurisdiction of the courts in regard thereto it is necessary to briefly examine its history. Prior to the English Divorce Act, in 1857, according to Blackstone, divorces were within the cognizance of the ecclesiastical courts. They were of two kinds, the one total and the other partial. The total divorce, a *vinculo matrimonii*, was always for some of the canonical causes, such as consanguinity or affinity; for these the marriage was declared null *ab initio*. Partial divorce, *a mensa et thoro*, was allowed when the marriage was originally lawful. 17 Am Jur, Divorce & Separation, §5, p. 149. The total divorce was in effect not a divorce but an annulment.

In England a divorce *a mensa et thoro* was the only divorce known to the ecclesiastical law. 27 CJS Divorce, §6, 524 note 45. As an incident of such divorces and based upon the

husband's duty to support the wife, the church courts granted her alimony when she was not at fault. *Rodda* v. *Rodda*, 185 Or 140 200 P2d 616, 621.

"The English law concerning divorce and causes of divorce as it existed prior to the American Revolution was the ecclesiastical law, and not the common law. It was administered by judges and courts whose jurisdiction never existed in this country and it has never been recognized as a part of our common law, although it has been stated that the law of marriage and divorce, as administered by the ecclesiastical courts, is a part of the common law of this country, except as it has been altered by statute. * * * In interpreting and applying them, the courts do in fact frequently resort to the principles and doctrines announced by the ecclesiastical courts in the application of the ecclesiastical law. When by our statutes any part of the jurisdiction exercised by the ecclesiastical courts is given to our courts, the settled principles and practice of those courts become guides for our courts." 17 Am Jur, Divorce & Separation, §6, p. 149.

Thus this Court in *LeBarron* v. *LeBarron*, 35 Vt 365, relied on by the petitioner and which was an annulment proceeding, after discussing the history of the ecclesiastical law, applied and followed the practice in that court in England in regard to the method of obtaining evidence by physical ecamination in connection with a ground to be proved in an annulment proceeding. It then discussed obiter the power of the court to grant temporary alimony in divorce cases and it is clear that what the Court said applied to that type of case only.

The ordering of the payment of money as alimony and the granting of alimony in any form, is but an incident to the granting of the divorce. Ordinarily, unless the divorce is granted, the court has no power or jurisdiction to grant permanent alimony. *Prosser* v. *Warner*, 47 Vt 667, 671. After a bill for divorce is filed, the court may order payment of temporary alimony. Upon dissolution of the marriage, it may decree to the wife such part of the real and personal estate of the husband, or such sum of money to be paid in lieu thereof, as it deems just, V. S. 47, §§3230, 3244, 3251. *Andrew* v. *Andrew*, 62 Vt 495, 496-497.

■ In most states the wife may, for the purpose of enforcing specifically the general duty of the husband to support her, maintain an independent action for alimony or separate maintenance and support, but this remedy exists only in equity or under statute and not at common law. 42 CJS, Husband & Wife, §614, p. 213. The petitioner has not called to our attention any cases or authority showing that the ecclesiastical courts in England ever had or exercised any jurisdiction on a petition of the wife when living apart from her husband to award her separate support. As said by this Court in *Morse* v. *Morse, supra,* 65 Vt 112, 114, 26 A 528, the statute authorizing a petition for this purpose introduced "a new and important element into the law of domestic relations in this state."

We have carefully read all the cases cited and relied on by the petitioner on the point we have been discussing. Some of them are petitions in equity, some involve petitions for a divorce, some involve fraud or other facts not present here. None of them appeal to us as authority for the petitioner's position. The petitionee's exceptions to the judgment order wherein it awarded support to the petitioner (paragraph 3 thereof) are sustained.

■ ■ From what we have said the findings requested by the petitioner by her requests Nos. 135 and 136, "That the petitionee, without just cause, has failed to provide suitable support for petitioner or their minor child, Penelope" and "Petitionee deserted petitioner," become immaterial. They apply to proceedings brought under §3256. A request for an immaterial finding is properly denied. *Laplante* v. *Eastman,* 118 Vt 221, 227, 105 A2d 265. Furthermore, the exceptions are too general to require consideration. The only ground stated is "that all the evidence requires such a finding and that the undisputed evidence requires such a finding." *Cole* v. *Cole,* 117 Vt 354, 366, 91 A2d 819. It also becomes unnecessary to consider petitionee's claim that the order for the support of the petitioner is unreasonable in amount.

Is the order for the support of the minor child reasonable or unreasonable? The petitionee claims it is unreasonable

both in view of the petitionee's financial condition and the child's needs. We first consider it in connection with the petitionee's financial condition. This question is raised by the petitionee's exceptions to some of the findings.

The petitionee excepted to finding 20 which states, quoting from petitionee's brief, "That in January 1952, the petitionee was financially able to purchase the petitioner's home in Windham for $26,000.00 and pay her $20,000.00 and $5,000.00 annually for ten years and $400.00 monthly for the child's support." He says in his brief that it is not supported by competent evidence. The record shows that it was an offer made by the petitionee to the petitioner and that it was admitted subject to exception for the limited purpose only of showing the petitionee's financial ability. We think it had that tendency. It is a fair inference that he would not have made the offer if he had not had the financial ability to comply with it. Its weight was for the trier. The exceptions to its admission and to the finding are without merit.

The petitionee excepted to finding No. 148 which states, "In 1950 petitionee was offered $1,600,000.00 for the assets of the Union Leader Corporation. The gross operating revenue of the Union Leader Corporation in 1952 was in excess of $2,021,000.00." The first part of the finding is based upon a statement in a letter from the petitionee to his mother, dated January 10, 1950, in which he stated that the total debt is $858,000.00 on a property that should be worth at least $1,600,000.00. This was the last offer I had for it and usually papers sell for the amount of their gross business which this year should be about $1,900,000.00." The petitionee briefs the only ground of the exception that there was no showing that the offerer knew that half the profits of the corporation were payable to its employees under the profit sharing plan. He then says in his brief, "The evidence was, therefore, incompetent and the finding has no legal support." The letter upon which the finding is based was received without objection. It supports the finding. The petitionee does not point to any evidence or any authority showing that a profit sharing plan reduced the value of the property. An exception to a finding

based upon evidence not excepted to when received is without merit. *Noble* v. *Bird*, 116 Vt 17, 20, 68 A2d 793.

The petitionee excepted to finding No. 149 which states, "The accepted and sound method of evaluating newspaper property, to which the petitionee subscribes, is the amount of the gross business for the preceding year." The ground of the exception is "that any method of evaluating newspaper property based upon the gross business for the preceding year does not apply to any newspaper which divides half its profits with its employees, as found in No. 111, and that such an arrangement with the employees materially affects the worth of the newspaper, and that, therefore, finding No. 149 is contrary to the evidence." All that the petitionee says in his brief in regard to this claim after saying, that he excepted to the finding is, that, "it·is sufficient to say that such a basis obviously cannot be used in the case of a newspaper which divides its profits with its employees as the Union Leader does." He does not point to any evidence in the record as to how such an arrangement does affect the valuation. Nor do we find any. For aught that he shows such an arrangement might increase instead of decrease the value. The exception is not sustained.

The petitionee excepted to finding No. 151 which states, "As of September 20, 1952, the liabilities of the Union Leader Corporation were approximately $900,000.00 and based upon current values petitionee's equity therein as a stockholder is between seven and eight hundred thousand dollars." The grounds of the exception are that the finding is contrary to the evidence, is not based upon competent evidence and that the petitionee's equity in the property is $81,326.14, less liability on a $60,000.00 suit pending." The petitionee in the exception and brief calls attention to testimony of the petitionee that the value of his equity is much different than this finding states it to be. On the ground of lack of supporting evidence, a finding must stand if there is legitimate evidence fairly and reasonably tending to sustain it; if this is so, the fact that the evidence is conflicting cannot avail the excepting party, for all conflicts must be resolved against him on review; and the

weight of the evidence and the creditability of the witnesses are for the trier of the facts to determine, and so, if he finds certain of the testimony to be implausible, it is not for us to revise his judgment here. *Sparrow* v. *Cimonetti*, 115 Vt 292, 297-298, 58 A2d 875, and cases cited.

The evidence and other findings show that the balance sheet of the Union Leader showed the value of its assets on September 30, 1952, as $1,324,683.16, and its total liabilities $930,957.05, and its stock and surplus value as of that date $393,726.11, and that the petitionee is its sole stockholder. Its gross valuation based upon its gross business for the preceding year is $2,021,000.00, and deducting the liability of $930,957.05, the net equity value is $1,090,042.95. Its gross valuation based upon the petitionee's own figures in 1950 for gross business is $1,600,000.00, and deducting the liabilities as of September 30, 1952 of $930,957.05, the net worth is $669,042.95. There was evidence and a finding unexcepted to that its debt position at present is nearly $100,000.00 less than in 1950. There was legitimate evidence fairly and reasonably tending to support the finding. The exception is without merit.

The petitionee excepted to finding 154 which states, "A $2,000,000.00 offer has recently been received by the petitionee for the assets of the Union Leader Corporation." The ground of the exception is that there is no evidence in the case that the petitionee received such an offer or any competent evidence upon which such a conclusion may be reached. This finding stems from testimony that the petitionee's mother received such an offer and that she communicated it to the petitionee. This evidence was received and then an objection made by the petitionee on various grounds, no request was made to strike it, but after some discussion an exception was allowed on the grounds stated. The petitionee relies upon *Sharp* v. *United States*, 191 US 341, 24 S Ct 114, 48 L Ed 211 and *Smith* v. *Reynolds*, 94 Vt 28, 38, 108 A 697 as authority that an offer to purchase property for a certain figure standing alone is not competent evidence of its value. For the purpose of this case, we will assume that there was an error in its

admission, and, therefore, error in making a finding based upon it. Upon this assumption, we must inquire whether the error is prejudicial, since error works a reversal only when it satisfies the court that the rights of the excepting party have been injuriously affected thereby. Supreme Court Rule 9. He who alleges error has the burden of showing that he has been prejudiced thereby. *Parker* v. *Hoefer*, 118 Vt 1, 10-11, 100 A2d 434, 38 ALR2d 1216, and cases cited.

From what we have seen and said in discussing other exceptions in regard to findings of the value of the Union Leader property, particularly in connection with finding No. 151, there was other evidence to amply support the court's findings of value without considering the $2,000,000.00 offer. No prejudice is shown and the exception is not sustained.

The petitionee excepted to finding No. 157 which states, "We find that the petitionee is so situated as to be well able to contribute $450.00 monthly towards the support of his minor child, Katherine Penelope, and also contribute $350.00 monthly towards the support of the petitioner, Eleanore Loeb, which said amounts are required to maintain said parties under the circumstances consistent with their station in life." The ground of the exception is, "That there is no evidence in the case to sustain the finding that the petitionee is well able to contribute the funds provided in said finding, * * * nor is there any evidence * * * that said funds are required to maintain the petitioner under the circumstances consistent with their station in life, in view of all the evidence and the exceptions to other findings specifically referred to herein." As we have seen on this ground, the finding must stand if there is any legitimate evidence fairly and reasonably tending to support it. *Sparrow* v. *Cimonetti, supra*. In view of our holding that the court had no jurisdiction to award support to the petitioner, the only part of the finding that now becomes material is in regard to the $450.00 monthly payment towards the support of the minor child.

In addition to the findings already discussed in regard to the financial worth and ability of the petitionee, unchallenged findings show that the petitionee owns all the common stock in a holding corporation which owns the common stock of

corporations publishing the Burlington Daily News and the St. Albans Messenger and that the petitionee has been very successful in operating these papers and the Union Leader thereby enhancing their value. Also since January, 1952, the petitionee's financial circumstances have substantially improved. We need not recite other evidence or findings bearing on this matter.

■ It appears from the findings that the petitionee has remarried and that his present wife has one child by a former marriage. He says in his brief, "On this record, after payment of interest and taxes in 1952, the petitionee had only $15,596.00 of disposal income with which to support himself and two families." Divorce and decreeing the custody of minor children to the mother do not absolve the father from his parental obligations to his children. He must still be reasonably liable for their support and education. It is not their fault that their parents are divorced. *Wheeler* v. *Lowell*, 91 Vt 278, 280, 100 A 39.

There is ample evidence tending to support the finding that the petitionee is financially able to contribute $450.00 a month towards the support of the child. The exception is without merit.

The petitionee excepted to part of finding No. 17 which states, "We find that the reasonable monthly sum required for the support of said minor child, Katherine Penelope, to be $450.00 per month." The ground of the exception is that "although the petitionee is anxious and willing to support his child, an award of $450.00 per month is unreasonable, is not required for the support of said minor child, and is unjustified by law and fact."

The findings show that the child is what is known as a hypertonic child needing special care to avoid frustration and extreme nervousness and to a certain extent is a difficult child to bring up properly and needs a strong sense of security. There was considerable evidence as to this special care and attention that the child had required and doctor's advice in regard to what was necessary along that line. There was direct evidence that it would require $450.00 per month to

give her proper care, support and maintenance and it is supported by other evidence.

■ The matter of award of alimony and support or division of property in a divorce case is a matter of discretion vested in the trial court. *Shaw* v. *Shaw*, 99 Vt 356, 359, 133 A 248; *Wacker* v. *Wacker*, 114 Vt 521, 49 A2d 119. It is logical that the same rule should apply in connection with a decree or order in connection with the care, custody and maintenance of a minor child under V. S. 47, §3253. The order does not show, as a matter of law, that the court below either refused to exercise its discretion or abused it. *Wacker* v. *Wacker, supra*, at page 523. The exceptions to the finding and also to the judgment order wherein it is ordered that the petitionee pay to the petitioneer $450.00 monthly by way of assistance for the care, support and maintenance of the minor child are not sustained.

In thus disposing of these exceptions we are not unmindful of and have read with great care the brief of the petitionee wherein he attempts to show by a breakdown of figures that $450.00 per month is unreasonable. We have also read with the same care the brief of the petitioner wherein she attempts to show by a breakdown of figures that it is reasonable.

The petitionee excepted to finding No. 15. The first part of the finding has to do with an amount necessary for the support of both the petitioner and the child jointly. Because of our holding in regard to support of the petitioner that part of the finding becomes immaterial. The rest of the finding has to do with the sum of $450.00 for the care, support and maintenance of the child per month. This is covered by what we have said in disposing of the exception to finding No. 17.

■ The petitionee excepted to that part of finding No. 16 which states in substance that if the petitioner was obliged to obtain employment it would require $400.00 per month to replace her with a person of the type of training, education, instruction and cultural tutoring possessed by the petitioner for the benefit of the child, or if no order is made for the benefit of the petitioner, the needs of the child would require at least $850.00 per month. The grounds of the exception are in

substance that there is no credible evidence to sustain such a finding. The $400.00 figure appears in the testimony of the petitioner as her opinion. It appears that it is her opinion only, that she had made no plan about procuring such a person, had made no investigation about it and had never tried to procure such a person. In arriving at the $850.00 figure, the court apparently added the $400.00 to the $450.00 that it found necessary for the child alone. We do not think that there is sufficient legitimate evidence fairly and reasonably tending to support this finding. We think it so far conjectural as to come within the rule in *Goodwin* v. *Gaston*, 103 Vt 357, 363-364, 154 A 772. The exception is sustained.

The petitioner excepted to the failure of the court to find that the petitioner's requirements for the support of herself and the minor child since June 1951 have been $800.00 per month exclusive of medical and dental care. She also excepted to the failure of the court to find that the needs of the child alone for proper support and maintenance since June 1951 have been $450.00 per month. The grounds of both exceptions are that, "all the evidence requires such a finding and that the undisputed evidence requires such a finding."

The record fails to show any request for these findings which is sufficient to require that the exceptions be overruled. *Gray* v. *Brattleboro Trust Co.*, 97 Vt 270, 274, 122 A 670. Furthermore, the first request becomes immaterial in view of our holding that the court had no jurisdiction to make any award for the support of the petitioner. Also the exceptions are too general to be available here. *Cole* v. *Cole*, *supra.* 117 Vt 354, 366-367, 91 A2d 819, and cases cited.

The petitionee excepted to finding No. 161 in which the court found that the attorneys for the petitioner have spent a large amount of time by way of preparation, conferences with client, conferences with opposing counsel and time in court and that reasonable attorneys' fees are $5,000.00 which should be paid by the petitionee. Also that the disbursements of petitioner's attorneys amounted to $1,289.39 which should be paid by the petitionee. The ground of the exception is in substance that the awarding of attorney's fees is unreasonable

under the circumstances, that the disbursements of attorneys are unreasonable in the light of the purpose of the litigation and that the sum of $5,000.00 for attorney's fees in this proceeding is unjustified and unwarranted. In his brief, the petitionee claims that the court had no authority to award counsel fees. It is questionable if this ground is within the scope of the exception. Our cases cited by the petitionee in his brief to this point are not applicable here. They apply to attempts to include attorney's fees as an element of damages.

From the record it appears that when the allowance of attorney's fees and disbursements was discussed before the trial court, the petitionee conceded and admitted that a reasonable attorney's fee should be allowed to the attorneys for the petitioner. It further appears that her attorneys had spent 588 hours on the case. They asked the court to allow them $5,000.00 for services and their disbursements of $1,289.39. The record further shows that the petitionee left what would be reasonable and fair to the good judgment of the court. The finding shows that the court allowed the amounts requested. Nothing has been called to our attention nor do we find anything in the record so that we can say as a matter of law that the amounts allowed are unreasonable. The exceptions to the finding and to the judgment order in that respect are not sustained.

After the judgment order was filed, the petitionee made and filed a motion to strike the judgment order. The substance of the motion is that before the findings were made and filed and the judgment order entered, the petitioner sold her Windham (Vermont) home and moved to Oyster Bay, New York, taking the child with her; that, as the order awarded the care, custody and control of the minor to the petitioner and provided that the petitionee be permitted to see and visit the child at reasonable times and places in Vermont, he is thus deprived of that right. There are other grounds that it is not necessary to mention. The court denied the motion and allowed the petitionee an exception. The petitionee is mistaken as to his remedy. Section 3253 upon which the petition stands provides upon petition for annulling, varying or modifying such decrees. The exception is without merit.

The petitionee under this motion to strike the judgment order briefs an exception to finding No. 107. This finding has to do with the occupancy of the Windham premises and its nonuse for farming purposes. In view of its sale before the findings were made and filed it was immaterial. No doubt if this had been called to the court's attention it would have been omitted as a finding of fact.

The petitionee excepted to paragraph one of the judgment order which granted the care, custody and control of the minor child to the petitioner with the right of visitation to the petitionee. He does not brief this exception so it is waived. *Strout* v. *Wooster, supra,* 118 Vt 66, 71, 99 A2d 689. The same rule applies to the failure of the petitioner to brief her exceptions to the judgment order as not supported by the facts found.

*The judgment order as amended is reversed as to paragraph three and it is affirmed as to paragraphs one, two, four and five. The cause is remanded.*