NELSON JOHNSON *v.* FRANK CHURCHILL'S ADMR. AND
ELLA J. CHURCHILL.

February Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON AND TAYLOR, JJ.

Opinion filed October 14, 1914.

*Husband and Wife—Homestead—What Constitutes—Husband's Sole Mortgage of Homestead—Validity.*

A husband's sole mortgage of his homestead, worth less than· $500, is void.

In a proceeding to foreclose a husband's sole mortgage of his real estate, worth less than $500, findings examined, and *held* to show that, when the mortgage was given, the property covered thereby was the husband's homestead, and that, therefore, the mortgage is void.

APPEAL IN CHANCERY. Petition to foreclose a mortgage of real estate. Heard on the pleadings and master's report, at the December Term, 1913, Windsor County, *Stanton,* Chancellor. Decree, *pro forma,* dismissing the petition. The petitioner appealed. The opinion fully states the case.

· *William Batchelder* for the petitioner.

*Wallace Batchelder, Edward R. Buck,* and *John J. Wilson* for the petitionees.

WATSON, J. The mortgage sought to be foreclosed was executed and delivered to the petitioner on September 14, 1906, by Frank C. Churchill, then in life, to secure the payment of a certain promissory note described therein. At the time of the execution of this mortgage, the defendant Ella J. Churchill was the wife of Frank and so remained to the time of his death, February 8, 1908. She did not join in the execution and acknowledgement of the mortgage. It is contended in defence that at the time the mortgage was given and at the time of Frank's death, the land covered by the mortgage constituted his homestead, and consequently the mortgage, executed by him alone, is inoperative and void. This land, found to be worth less than five hundred dollars, is in the town of Barnard and is called the "Bruce lot." It was purchased and possession thereof taken by Frank, July 13, 1895. At that time there were no buildings of any kind on it. He and his family were then living on the "Clifford place," so-called, in Barnard, of which he had an equitable title under a land contract, dated March 27, 1893, and they continued to live there until the year 1902, when they rented a house in Barnard village and removed there in order better to suit his convenience in prosecuting his duties as road commissioner, to which office he had been elected. He held possession of the Clifford farm and rented or otherwise worked it until June 2, 1905, when he surrendered possession thereof to his vendor.

Soon after the purchase of the Bruce lot, Frank and his wife set out apple trees there, currant and other berry bushes, in contemplation of building a house on the premises. In the year 1901, he erected a barn on the lot and about the same time moved on to it a small building which was finished up for a

living place.   In June, 1903, while living in the rented house
in Barnard village, Frank and his wife quarrelled, separated,
and never again lived together as husband and wife.   Whether
he kept the Clifford place as a homestead for any length
of time after thus moving away is not very material; for
if he did he abandoned his homestead there in 1904.   The findings
show that after the separation between him and his wife, and
while living in the rented house in Barnard village, "he in-
tended to fix it so as to secure a home for himself but not for his
family" on the Bruce lot; and it fairly appears that in the
carrying out of this purpose, he, during the season of 1904,
caused a cellar to be dug and stoned up for a new house on that
lot, and on the 10th day of October of the same year he deeded
the lot to his son Clarence M. Churchill by warranty deed contain-
ing a provision as follows: "The condition of this deed is such
that if the said Clarence M. Churchill shall at all times provide
and maintain a dwelling-house on said premises and shall furnish
said grantor a home on said premises to be occupied by him if
he shall so desire at any time during the lifetime of the said
grantor then this deed shall be of full force; otherwise null and
void and of no effect."

It is further found that Frank lived in the small house
there "during two winters and one summer after the year
1905," a part of the time at least having a housekeeper; that he
left there on May 17, 1907, going to work at Canaan, New Hamp-
shire, and intending never to return to Vermont to live or reside;
and that thereafter he remained in Canaan until his death.
According to these findings the time of his thus living on the
Bruce lot must have been during the winter of 1905-1906, the
summer of 1906, and the winter of 1906-1907, continuing until
the 17th day of May in the last named year.

The record before us therefore shows that after Frank's
separation from his wife he not only "intended to fix it so as
to secure a home for himself" on the Bruce lot during his life,
but that he undertook to carry this intention into effect, and in
fact occupied the house on the premises as his home throughout
the year of 1906, (and more too), the year in which the mort-
gage in question was executed and delivered by him to the
petitioner.   Thus it appears that at the time of the execution of
the mortgage, the premises covered by it constituted Frank's
homestead and were being used by him as such.   *Rice* v. *Rudd*,

57 Vt. 6; *Woodbury* v. *Warren,* 67 Vt. 251, 31 Atl. 295, 48 Am. St. Rep. 815; *Hyser* v. *Mansfield,* 72 Vt. 71, 47 Atl. 105. It follows that since his wife, Ella J., did not join in the execution and acknowledgement of the mortgage, it is inoperative and void. P. S. 2553; *Martin* v. *Harrington,* 73 Vt. 193, 50 Atl. 1074, 87 Am. St. Rep. 704; *Laird, Assignee* v. *Perry,* 74 Vt. 454, 52 Atl. 1040, 59 L. R. A. 340; *Cushman* v. *Davis,* 79 Vt. 111, 64 Atl. 456; *Davis* v. *Davis,* 81 Vt. 259, 69 Atl. 876, 130 Am. St. Rep. 1035. This being decisive of the case, the question touching the admissibility of the testimony given by Ella J., as to her husband's purpose in purchasing the Bruce lot and putting buildings thereon, becomes immaterial and is not considered.

Whether Frank afterwards abandoned his homestead in those premises is of no importance in this case; for the mortgage, being absolutely void *ab initio* for want of power in him, a married homesteader, alone to execute it, no subsequent change of circumstances can operate to validate it. Holl. Jur. 118.

*The pro forma decree is affirmed and cause remanded.*