## Williston Citizens for Responsible Growth v. Maple Tree Place Associates and Town of Williston

[593 A.2d 469]

No. 89-568

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed May 24, 1991

*Harvey D. Carter, Jr.*, Burlington, for Plaintiff-Appellant.

*Fred I. Parker* and *Alison J. Bell* of *Langrock Sperry Parker & Wool*, Burlington, for Defendant-Appellee.

**Allen, C.J.** Williston Citizens for Responsible Growth (CRG) appeals from a superior court decision upholding the Town of Williston's allocation of sewer capacity to a mall project that Maple Tree Place Associates (MTP) proposes to build at Tafts Corner, Williston. We affirm.

The issue on appeal is whether the sewer commissioners, in granting a sewer allocation to MTP, acted in conformance with Williston's sewer ordinance. The sewer ordinance contains standards to be followed by the commissioners in allocating sewer capacity. The standards address both allocation among the various zoning districts of Williston and allocation, upon application, to individual users within each zone. The standards provide that allocation to projects such as that proposed by MTP are to be considered in the following manner:

2. *Allocation Among Projects*

A. All proposals for subdivision and or land development must first progress through the Planning Board process

and be given preliminary "conceptual" approval by that board prior to requesting future sewer allocation approval from the Board of Selectmen as Sewer Commissioners. The Selectmen will then consider each project on an individual basis to assess the degree to which such project implements the goals and objectives of the Town Plan.

B. In the event there is insufficient zone allocation to satisfy proposed projects within a zone, the Town recognizes that a "first come-first served" method of allocation among projects is not effective, in the goals, objectives, policies and recommendations of the Town Plan. Therefore, the Town has decided that those projects which implement the Town Plan to the greatest degree will be given priority in sewer allocations.

MTP received conceptual approval for its project from Williston's planning commission on March 2, 1988. At a public hearing on March 24, 1988, the sewer commissioners gave final consideration to MTP's requested sewer allocation. At the hearing, CRG's counsel argued that § 2.A of the allocation standards required the sewer commissioners to measure MTP's proposed project against the goals and objectives of the Town Plan. The sewer commissioners declined to do so. Relying on previously solicited opinions from legal counsel, the sewer commissioners determined that, under the ordinance, there was no basis to deny an allocation request unless there was more than one allocation request pending and there was insufficient capacity in the zone to satisfy all pending requests. Because there were no other requests pending and there was sufficient capacity in the zone, the sewer commissioners granted MTP's allocation request.

CRG appealed the sewer commissioners' decision to superior court and moved for summary judgment. CRG argued that the commissioners' failure to measure the proposed project against the goals and objectives of the Town Plan violated the sewer ordinance, rendering the sewer allocation to MTP void. MTP responded with its own motion for summary judgment, arguing that the sewer commissioners had acted in conformance with the ordinance. The superior court granted MTP's summary judgment motion, and CRG appealed to this Court.

Whether the sewer commissioners acted in conformance with the sewer ordinance hinges on interpretation of § 2 of the allocation standards. CRG contends that, by its plain meaning, § 2.A imposes a duty on the sewer commissioners to measure each subdivision proposal against the goals and objectives of the Town Plan, whether or not competing projects and insufficient zone allocation exist. According to CRG, § 2.A clearly provides that, if an individual subdivision proposal does not carry out the Plan's goals and objectives, its sewer allocation request is to be denied. We disagree.

■ First, § 2.A does not have a plain meaning that is controlling. See *Burlington Electric Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335–36, 576 A.2d 450, 452 (1990) ("Where the meaning of a statute is plain on its face, this Court will enforce the statute according to its terms for 'there is no need for construction; the legislative intent is to be ascertained from the act itself.'") (quoting *Hill v. Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983)). Although § 2.A provides for an assessment of the "degree to which" each project implements the Town Plan, it makes no express provision for what is to be done with this assessment of degree. Further, an assessment that a project implements the Town Plan to a certain degree raises no inference as to what to do with the project's allocation request. Such an assessment, without more, tells the sewer commissioners nothing. This omission renders CRG's plain meaning argument untenable.

■■ Because there is no plain meaning, this Court must necessarily engage in construction of the ordinance to discern the intent behind § 2.A's assessment. *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). This inquiry is not limited to consideration of an isolated sentence within § 2.A itself; rather, we must look to the whole of the ordinance. *State v. Jarvis*, 146 Vt. 636, 637–38, 509 A.2d 1005, 1006 (1986). As shown above, § 2.A makes no provision, either expressly or inferentially, for what the sewer commissioners are to do with their assessment of the degree to which a project implements the Town Plan. In contrast, § 2.B expressly provides for what is to be done with the assessment. If there are competing projects and insufficient zone allocation to satisfy them all, § 2.B provides that "those

projects which implement the Town Plan to the greatest degree will be given priority in sewer allocations." Only § 2.B effectively addresses what is to be done with § 2.A's assessment of degree. An assessment that a project implements the Town Plan to a certain degree has no meaning until it is compared with equivalent assessments of competing projects. Accordingly, the proper interpretation of the ordinance is that an assessment is required only when there are competing projects and insufficient zone allocation.

We note two additional factors that cut against reading § 2 to require an assessment of each project even when there are no competing projects and sufficient zone allocation exists. First, § 2 is not entitled "Allocation to a Project." Rather, it is entitled "Allocation Among Projects." "Among" implies comparison, which supports interpreting the ordinance as requiring an assessment only when there are competing projects and insufficient zone allocation.

 Second, interpreting § 2.A as requiring an assessment of the degree to which each project implements the goals and objectives of the Town Plan would have the sewer commissioners directly duplicating the efforts of Williston's planning commission. After receiving conceptual approval from the planning commission, a proposed subdivision such as MTP's project must then apply for preliminary subdivision approval from the planning commission. The first standard against which the planning commission must measure a subdivision proposal is, in part, whether "the proposed development is in compliance with the Williston Comprehensive Plan." MTP submitted its application for preliminary subdivision approval in May of 1988. Sixteen public hearings were held on the application. On December 5, 1989, the planning commission concluded, in part, that MTP's project, if constructed, would violate goals 1, 3, and 10 of the Town Plan. In the absence of a plain indication to the contrary, we decline to conclude that the Town intended to have its sewer commissioners duplicate the inquiry that its planning commission is obligated to give each proposed subdivision.

*Affirmed.*