## Estate of Sydney Girard v. Justina Laird, et al.

[621 A.2d 1265]

No. 92-133

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed January 15, 1993

*Donna Russo-Savage* and *Ralph W. Howe III* of *Paterson & Walke, P.C.*, Montpelier, for Plaintiff-Appellant.

*David A. Otterman* of *Otterman and Allen, P.C.*, Barre, for Defendants-Appellees.

**Dooley, J.** This is a dispute over the ownership of a house and surrounding land located at 3–5 Hillside Avenue in the City of Barre. The contending parties are plaintiff, estate of Sydney Girard, and certain relatives of Sydney Girard (defendants) who claim title under a deed from Sydney Girard to his parents, Francis and Patricia Shepard. The Washington Superior Court awarded title to defendants. We affirm.

The parties stipulated to the facts in this one-issue case. Girard purchased the property from his grandparents in 1975. Shortly thereafter, he married Sharon Houle, and they took up residence on the property. A son, Jonathan, was born in 1979. The couple separated in 1979, however, and neither Sharon nor Jonathan ever again lived in the Barre premises. A year later, Girard conveyed the property to his parents by his sole deed, but he continued to live on the property until May of 1986. Through later transfers, record title to the property ended up in Girard's aunt, Justina Laird.

In 1982, Girard and Sharon Houle divorced. The final order, which was based on a stipulation between the parties, provided that "[t]he real property at 5 Hillside Avenue, Barre, Vermont, belonging to [Girard] is awarded to [Girard], subject to debts presently on this property."

Girard died in 1990, and his former wife and son opened an estate. They made a formal demand that Justina Laird convey the Barre property to Jonathan. When Justina Laird refused, this suit ensued.[1] Plaintiff's claim is that the Girard deed to his parents was void because Sharon Houle did not join in it to convey her homestead interest. Because it was void, they argue that the property remains in Girard's estate and passes to his heirs.[2]

The trial court found that conveyance from Girard to his parents was made without the required participation of his wife Sharon but that the defect made the conveyance only voidable

---

[1] After the demand was made on Justina Laird, defendants made a claim on the estate, asserting protection under the covenants of warranty contained in the deed from Girard to his parents. That claim is pending in probate court awaiting the outcome of this suit.

[2] The dispute relates only to that part of the Barre property which is homestead. Plaintiff argues that the property is entirely covered by the homestead exemption because the value at the time of the invalid conveyance in

by Sharon. Because Sharon failed to void the conveyance before the divorce, and she lost all interest in the property in the divorce, the court held that the conveyance was no longer voidable. Accordingly, it awarded summary judgment to defendants.

██ The parties agree that there are no disputed issues of fact, and the case was properly decided by summary judgment. Plaintiff renews here its argument that Girard's deed was void, and the property remains in the estate. Defendants rely on the trial court analysis, adding that Girard was estopped to contest the validity of his deed. Both agree that the controlling statute is 27 V.S.A. § 141(a), which provides:

> § 141. Execution and acknowledgement of conveyance
> (a) A homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, unless the wife or husband joins in the execution and acknowledgment of such conveyance. A conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead provided for in this chapter.

The statute is part of the remedial scheme to protect home ownership from loss to creditors, to conserve family homes and to "'save [families] from disintegration and secure their permanency.'" *Mercier v. Partlow*, 149 Vt. 523, 524, 546 A.2d 787, 788 (1988) (quoting R. Waples, Homestead and Exemption ch. 1, § 2, at 3 (1893)). The main provision of the homestead law exempts from attachment or execution the "dwelling house, outbuildings and the land used in connection therewith, not exceeding $30,000.00 in value, and owned and used or kept by [a natural] person as a homestead." 27 V.S.A. § 101.

As plaintiff emphasizes, we have generally held that under § 141(a) a deed to a homestead property, executed by only one

---

1980 governs and that value was well below $30,000, the maximum amount protected by the homestead exemption. See 27 V.S.A. § 101. As evidence of its position, plaintiff points out that in 1989 the property was sold to Justina Laird for $30,000. Because of our disposition of the case, we do not reach this argument.

spouse, is void ab initio for noncompliance with the statute. This rule was clearly stated in *Martin v. Harrington*, 73 Vt. 193, 50 A. 1074 (1901), in part to resolve conflict in earlier precedents. In *Martin*, a husband mortgaged homestead property by his sole deed. His wife subsequently died, and he remained on the property, eventually remarrying. When he died, litigation arose between the mortgagee and the second wife over the validity of the mortgage. Rejecting the mortgagee's position that the mortgage deed was voidable on the initiative of the first wife, the Court held that "the sole deed of the [husband] was void so far as the homestead was concerned and was not rendered in any way effective by the subsequent death of the [first] wife." *Id.* at 201, 50 A. at 1076. The *Martin* rule has been followed in other cases where the issue arose directly. See *Ellingwood v. Ellingwood*, 91 Vt. 134, 138, 99 A. 781, 782 (1917); *Johnson v. Churchill's Adm'r*, 88 Vt. 137, 140, 92 A. 26, 27 (1914); *Laird v. Perry*, 74 Vt. 454, 462, 52 A. 1040, 1042 (1902). As stated in *Johnson*, the rule is that "the mortgage [conveyed in violation of the statute], being absolutely void *ab initio* for want of power in him, a married homesteader, alone to execute it, no subsequent change of circumstances can operate to validate it." 88 Vt. at 140, 92 A. at 28. Applying the rule in *Ellingwood*, the Court found the husband's sole deed void where he attempted to convey the property to his wife through a third person. 91 Vt. at 138, 99 A. at 782.

The cases indicate two rationales behind the *Martin* rule. The first is that it is commanded by the words of the statute. That is the primary rationale expressed in *Abell v. Lothrop*, 47 Vt. 375, 380 (1875), on which *Martin* relies: "Surely, no more explicit language could be used to negative the right of the husband to convey either his own or his family's interest in the homestead. His deed is absolutely void . . . ." *Martin* echoed that the words of the statute were the "equivalent to saying that the deed is null and void and has no force." 73 Vt. at 199, 50 A. at 1076.

The second is that the statute is intended to protect not only the spouse who did not join in the conveyance but also the spouse who made the conveyance. *Martin* reasoned:

> The statute protects the [owner of the] homestead against any attachment by a creditor, although he has no

wife nor children. Considering the object of the statute that it is to preserve a home for the family it is not unreasonable to hold that it is as much for the benefit of an aged housekeeper, a demented octogenarian, with no means of support, as it is for the benefit of a young widow, just out of her teens, who may have a competence in her own right.

The homestead act was to protect the husband as well as the wife and this construction is not a strained one for we can have in mind that "Courts often do accommodate the provisions of a statute to cases which they were obviously intended to cover although not well suited to accomplish."

73 Vt. at 199–200, 50 A. at 1076 (citation omitted); see also *Ellingwood*, 91 Vt. at 138, 99 A. at 782 ("homestead act protects the husband as well as the wife").

Although we concur with plaintiff that the *Martin* line of cases, never overruled, supports its argument that the Girard deed was void ab initio, we note that our precedents are not in a straight line. More recently, the issue arose in *Cole v. Cole*, 117 Vt. 354, 91 A.2d 819 (1952), where the wife in a divorce proceeding sought an order declaring void the conveyance of the marital homestead made in violation of § 141(a). Although the *Martin* rule would have entitled the wife to relief, the Court emphasized that the purchasers gave value without notice that the husband was married and were entitled to some protection. It held that the trial judge had discretion to determine whether to grant the relief requested pending the outcome of the divorce. *Id.* at 365, 91 A.2d at 825. The opinion is not entirely clear on this point, but we read it as holding that the final divorce order could cure any defect in the conveyance to the bona fide purchasers. In part, this is an application of the rule that "the final judgment in a divorce proceeding terminates a homestead right." *Condosta v. Condosta*, 142 Vt. 117, 122, 453 A.2d 1128, 1130 (1982).

*Cole* is not the first deviation in the line of cases. *Martin* itself had to overrule *Whiteman v. Field*, 53 Vt. 554 (1881), which held that the object of the then-existing version of § 141(a) was to protect the wife and minor children and that object was "fully attained by holding that the sole deed of the husband and father is voidable for the benefit of the wife and children." *Id.* at 559.

Defendants urge us to rely on *Cole* to hold that the *Martin* line of cases is inapplicable in these circumstances where the wife's homestead interest has been terminated by divorce. We conclude that such a rationale would leave the law in a state of confusion, relying on distinctions without differences. We choose to reach the same result by overruling *Martin* and its progeny and reinstating the rule announced in *Whiteman*.[3]

■ We adopt this approach because we find that the *Martin* rule leads to unnecessary injustice and that neither of the rationales supporting its adoption are valid. The main rationale is the plain meaning rule of statutory construction, see *Venman v. Patrissi*, 156 Vt. 257, 258, 590 A.2d 897, 898 (1991), based on the conclusion that "inoperative" in § 141(a) plainly means "void." Of course, the rule does not apply where the wording is ambiguous and there is no "plain meaning." See *Williston Citizens for Responsible Growth v. Maple Tree Place Assocs.*, 156 Vt. 560, 563, 593 A.2d 469, 470 (1991) (statute has no plain meaning that controls). We think that is the case here. The word "inoperative" conveys that the attempted transfer of the homestead interest of the nonconveying spouse was ineffective but says nothing about whether the defect can be cured or continues after the spouse's homestead interest is extinguished. See *Grissom v. Anderson*, 79 S.W.2d 619, 621 (Tex. 1935) (conveyance by husband, not joined by wife "is merely inoperative while the property continues to be a homestead"). For example, we describe an automobile which will not run as "inoperative" without implying whether it can be repaired and become operative.

---

[3] Defendants have not asked us to overrule *Martin*, relying instead on *Cole*. Although we have frequently reached results for reasons different than those argued by the parties, we necessarily must be careful in overruling past precedents without the benefit of the parties' advocacy. In this case, the parties were asked at oral argument to address whether the *Martin* line of cases should be overruled, and they did so. In their briefing on the effect of *Cole*, they have addressed the merits of the possible rules. We reach this result sua sponte because of our obligation to develop and explain the law of Vermont for its citizens who rely on and use it. See Tate, Sua Sponte Consideration on Appeal, 9 Judges J. 68 (1970), *reprinted in* R. Aldisert, The Judicial Process 731 (West 1976) (to prevent injustice courts frequently consider sua sponte grounds for decisions).

The choice of words has significance in light of the nature of the homestead interest of the spouse who does not own the property. As explained in *Cole*:

> The homestead right is a right to be set out of the estate of the husband or head of the family and is treated as an exemption of so much of his estate as is included within it, for the benefit of his widow after his decease. It does not become a fixed and definite estate in the land until it is ascertained and set out. Before it is ascertained and set out, it is nothing more than a contingent or inchoate right — a conditional lien or encumbrance — upon the estate of the husband in favor of his wife.
>
> The homestead interest vests no title during the lifetime of the husband but is only a contingent and inchoate right which, if not released or otherwise barred, may be enforced if the wife survives him.

117 Vt. at 363–64, 91 A.2d at 824–25 (citations omitted); see also *Condosta*, 142 Vt. at 122, 453 A.2d at 1130 (spouse's homestead interest is inchoate and is lost on divorce). It is simplistic to say that the wording of the statute clearly directs whether an invalid conveyance of a contingent and inchoate interest has legal consequences if the contingency never occurs or the interest is "released or otherwise barred."

We find the alternative rationale for the *Martin* rule even less persuasive, especially where creditors are not involved. *Martin* involved a certain leap of logic in holding that a statute that invalidates the husband's deed when not joined by the wife, while validating it if the wife joins, is intended to protect the husband. Nor was the logic aided by references to others, for example the "aged housekeeper," who might reside in the homestead. While there may be gaps in logic, however, the effect of the decision was to prevent collection by a creditor who "knew he did not receive" a valid mortgage. *Martin*, 73 Vt. at 199, 50 A. at 1076. There was no adverse impact on either of the spouses who held the homestead interest.

In a conveyance case like the one before the Court, the effect of *Martin* is to defeat the desires and expectations of the very persons we are protecting. This effect was most pronounced in *Ellingwood*, where the *Martin* rule was applied to defeat a conveyance of the homestead property from husband to wife, os-

tensibly made for the purpose of protecting the wife. In response to the obvious injustice caused by the rule, the Court answered that the statute makes no distinction for cases intended to benefit the wife but is intended to protect the husband also. 91 Vt. at 138, 99 A. at 782. This is exactly the type of "absurd results" *Whiteman*, 53 Vt. at 559, predicted would result from a rule that made the improper conveyance void ab initio.

We are called upon again in this case to defeat expectations for the purpose of protecting the person with the expectations. Girard voluntarily conveyed the property to his parents, and through subsequent conveyances it stayed in his family. His parents paid the purchase money mortgage while he lived on the premises. Even after his wife was aware of the transfer, she voluntarily and specifically relinquished all interest in the homestead property in the divorce proceeding. It is inescapable that application of the *Martin* rule to this case will visit an injustice on innocent persons for no defensible reason.

Finally, we note that the law on which plaintiff relies was developed in the nineteenth century and has not been reexamined in modern times. The original purpose of the homestead exemption was the "conservation of family homes." *Mercier v. Partlow*, 149 Vt. at 524, 546 A.2d at 788 (quoting R. Waples, Homestead and Exemption ch. 1, § 2, at 3 (1893)); see also 2A R. Powell and P. Rohan, The Law of Real Property ¶ 263[2] (1992) (homestead exemptions have changed from a means to "assure a permanent common home for the members of a family" to a device to shelter part of a debtors' estate from creditors). Currently, the amount is such that it no longer conserves even a modest home. See 27 V.S.A. § 101 (homestead exemption limited to $30,000); *Mercier*, 149 Vt. at 525 n.1, 546 A.2d at 789 n.1 (average price of a home in Vermont in 1986 was $60,500). Thus, in most cases enforcement of the *Martin* rule will keep some funds from creditors but will not prevent the loss of the home or ensure the ability to purchase a new one. The rule thus often fails to serve the original purpose of conserving the family home.

We do not lightly overrule settled law especially where it involves construction of a statute which the legislature could change at any time. We also recognize that the *Martin* rule has

been adopted in most other states in this country, see 2 Patton on Land Titles § 399, at 211-12 (2d ed. 1957), although a few jurisdictions have reexamined it in modern times. One court which has reexamined the rule in recent years has abandoned it. In *Speck v. Anderson*, 318 N.W.2d 339, 344 (S.D. 1982), the South Dakota Supreme Court enforced an option to sell homestead property given only by the husband, but exercised after the death of the wife. The court acknowledged that its earlier precedents made any attempted conveyance of homestead property by one spouse void ab initio. It abandoned that rule, reasoning:

> To guard the homestead right jealously in order to vindicate and effectuate the purposes of the constitutional and statutory expression of our citizens' concern for the security of the family is certainly a task that the judiciary should not shirk. When these purposes have been accomplished, however, to permit the assertion of the homestead exemption to be raised by those who have no rights under the homestead exemption statutes would be to arm with a sword those who need no such weapon.

*Id.*

This is not an area where legislative silence alone should be taken as an endorsement of the *Martin* rule. See *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 241 (1970) (congressional silence alone should not be interpreted as adoption of prior decision). The injustice we observe here arises only sporadically and is unlikely to become the grist of legislative reform efforts. Nor has the *Martin* rule been relied upon by individuals in planning their affairs. By overruling it, we are simply announcing "a new remedial rule to effectuate well-established primary rules of behavior." *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403 (1970). Although we are reducing the risk faced by those who attempt to take title or a mortgage of homestead property by a single-spouse conveyance, the remaining risk is great enough to deter any prudent purchaser or mortgagee.

■■ When a rule of law lacks justification in legal principles or reason, our duty is to overrule it no matter how long it has been embedded in our jurisprudence. See Traynor, *Reason-*

*ing in a Circle of Law,* 56 Va. L. Rev. 739, 744–46 (1970). Such rules "tend to discredit the law [and] should be readily rejected." *Rothberg v. Olenik,* 128 Vt. 295, 305, 262 A.2d 461, 467 (1970). We abandon the rule announced in *Martin* that a conveyance of homestead property by only one spouse is void ab initio. Such a conveyance is ineffective with respect to the spouse who did not join it and may be set aside by that spouse unless the homestead interest is otherwise extinguished. Here, the homestead interest of Sharon Houle was voluntarily relinquished in the divorce and cannot be enforced thereafter. There was no ground to hold that the Barre property remained in Girard's estate.

*Affirmed.*