**In re JOHN W.**

**No. 95–448–Appeal.**

Supreme Court of Rhode Island.

Sept. 10, 1996.

Frank P. Iacono, Jr., CASA, Regina M. Gibb, DCYF, for Plaintiff.

Catherine Gibran, Asst. Public Defender, Paula Rosin, Asst. Public Defender, Christine Ariel, for Defendant.

## OPINION

PER CURIAM.

This matter came before the court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. In this case the mother appeals from a Family Court judgment terminating her parental rights to her ten-year-old son, John W.[1] After hearing oral argument and examining the memoranda submitted by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

In October of 1992, John, then six years old, was removed from his mother's care following the filing of an abuse-and-neglect petition by the Department of Children, Youth and Families (DCYF). On February 25, 1993, the mother admitted to dependency, and John was placed in the custody of DCYF. John's removal was prompted by his mother's inability to provide him with adequate medical care. John was diagnosed with Type I (juvenile) diabetes, in May of 1992. According to Dr. Philip Gruppuso,[2] juvenile diabetes is a controllable disorder provided the patient receives daily insulin injections and proper management of diet. If the disorder is not properly controlled, long-term consequences such as blindness, kidney disease, and heart failure may result.

Immediately after John's condition was diagnosed, Rhode Island Hospital began working with the mother to instruct her on how to care for her son's diabetes. Nonetheless, after three weeks in a training program geared toward accommodating the mother's intellectual limitations, she failed to grasp the importance of managing her son's diabetes.[3] Despite assistance seven days a week from either a visiting nurse or a parent aide, John's mother continued to have trouble administering his insulin and controlling his access to foods that caused elevated sugar levels. Doctor Gruppuso testified that John "was out of control when under his mom's supervision." Once John was removed from his mother's care, John's medical condition improved measurably.

Testimony presented by social workers, doctors, and a visiting nurse established that the mother has borderline intellectual function and lacks the parental and management skills necessary to care for her son and his condition. One DCYF social worker testified that the mother had difficulty parenting despite services provided to her,[4] such as Comprehensive Emergency Services, Child, Inc. (daycare), the Visiting Nurses Association, and a parent aide. In an attempt to reunify John with his mother, a second social worker referred the mother to several programs, including the Kent County Reunification Program and the Sophia Little Independent Living Program, but the mother either refused to participate or never fully utilized the services provided to her.

Further, the visiting nurse stated that she was gravely concerned about the mother's inability to contact medical personnel when needed, to rotate the sites of John's insulin injections, and to control her son's diet and

---

1. John was born on August 26, 1986.

2. Doctor Gruppuso, the director of pediatric endocrinology and metabolism at Rhode Island Hospital, became involved with John's care in May of 1992 when John was diagnosed with Type I diabetes.

3. Doctor Gruppuso testified that it normally takes three to four days to train parents to care for diabetic children.

4. The mother's parenting problems included her inability to control John's behavior, to provide him with proper hygiene, and to maintain a minimally ordered home life.

behavior.[5] She concluded that, in order for John to reside safely with his mother, a program providing twenty-four-hour supervision would be needed, but no such program existed. After DCYF placed him in foster care, the nurse added, both John's behavior and his diet improved substantially.

The clinical psychologist who conducted a parent-child evaluation concluded that the mother was mildly retarded and lacked not only the motivation but also the capacity to adapt to changing circumstances. The evaluation report indicates that the mother does not understand her child's medical needs, is incapable of differentiating serious from mild diabetic reactions, and cannot recognize the actions she must take to counter these adversities. The report concludes that the mother fails to understand the significance of her role in managing her son's care, not to mention, how she should perform that role. The psychologist testified that "this boy's life would be in danger if he were simply permitted to be in [his mother's] care without continual daily supervision * * * and I am not even sure that would suffice."

After a thorough review of the evidence, the trial justice found that, despite efforts to educate the mother about John's medical needs and to reunite the family, the mother's inability to provide adequate medical care posed a threat to John's life.[6]

■ When this court reviews a case involving the termination of parental rights, the record is examined to determine if legally competent evidence exists to support the findings of the trial justice. *In re Jennifer R.*, 667 A.2d 535, 536 (R.I.1995). The findings of a trial justice are entitled to great weight and will not be disturbed on appeal unless they are clearly wrong or the trial justice misconceived or overlooked material evidence. *In re Kristen B.*, 558 A.2d 200, 204 (R.I.1989). In our opinion the facts in this case support the trial justice's findings of unfitness as well as his findings that the

conditions of the home are not likely to change in the foreseeable future.

■ Parental unfitness may be found if the court determines by clear and convincing evidence that conditions exist that are seriously detrimental to the child, such as:

"Emotional illness, mental illness, mental deficiency or institutionalization of the parent including imprisonment, of such a duration as to render it improbable for the parent to care for the child for an extended period of time." G.L.1956 § 15–7–7(b)(i).

■ Termination of parental rights is also proper if

"[t]he child has been placed in the legal custody or care of the department for children, youth and families for at least twelve (12) months; and the parents were offered or received services to correct the situation which led to the child being placed and provided further that there is not a substantial probability that the child will be able to return to the parents care within a reasonable period of time considering the child's age and the need for a permanent home." Section 15–7–7(c), as amended by P.L.1994, ch. 233, § 1.

In this case, John has been in DCYF's care since he was six years old. Despite extensive efforts to teach the mother how to care for her son's condition, the mother has failed to change her conduct and to improve the conditions that caused John to enter DCYF care initially. The trial justice found John to be a special-needs child whose physical and medical requirements have not been met by his mother, notwithstanding reasonable efforts by DCYF to reunite the family. Reasonable efforts toward reunification must be demonstrated by clear and convincing evidence and may be substantiated by attempts to provide the family with services, case plans, visitation, and furnishing the parent with information of the child's well being. *In re Kathaleen*, 460 A.2d 12, 14 (R.I.1983). Here, the mother never followed through with DCYF's referrals to either the Kent

---

**5.** At one point the visiting nurse notified the Child Abuse and Neglect Tracking System (CANTS) because the mother was unable to control John, who was swinging on drapes and running recklessly about with a butter knife.

**6.** In addition to Type I diabetes, John has been diagnosed as having Attention Deficit Disorder.

County Reunification Program or the Sophia Little Independent Living Program. Despite the numerous services provided to her, the mother was unable to provide for her son's welfare and make his return home possible. Undisputed testimony clearly indicated that putting John back into his mother's home posed a serious risk to his health.

■ Once parental unfitness is established, the best interest of the child outweighs all other considerations. *In re Michael F.*, 665 A.2d 880, 881 (R.I.1995). We have stated that a child has a fundamental interest in the security of his or her person and that "[t]he state through its power and obligation as *parens patriae* has both a rational and compelling interest in interference in family autonomy when [a child's] basic rights * * * are violated or threatened." *In re Lester*, 417 A.2d 877, 880–81 (R.I.1980).

On appeal, counsel for the mother argues that it is contrary to John's best interest to sever his ties with his mother. She requests that we remand this case to the Family Court for a hearing to determine the possibility of an open-adoption arrangement with John's foster family. It is our opinion, however, that remanding this case to the Family Court will serve only to delay and to endanger John's adoption and the permanency he so fully deserves. John has resided in his current foster home since September of 1994. The evidence indicates that John has bonded with his foster parents, that his diabetes is under control, and that his behavior has improved. This family wishes to adopt John, and John desires to be adopted by them.

For the reasons stated, the mother's appeal is denied and dismissed. The judgment appealed from is affirmed, and the papers in the case may be remanded to the Family Court.