**In re ZACHARY A.**

**No. 96–296–Appeal.**

Supreme Court of Rhode Island.

March 3, 1997.

Frank P. Iacono, Anthony E. Angeli, Jr., Providence, Regina M. Gibb, Wakefield, for Plaintiff.

Paula Lynch Hardiman, Providence, for Defendant.

**OPINION**

PER CURIAM.

Adrienne Alvarado (Alvarado) appeals from a Family Court decree adjudging her to have neglected her four-month-old son Zachary. The decree committed Zachary to the care, custody, and control of the Department of Children, Youth, and Families (DCYF) and placed him with his mother at the Sstarbirth residential drug-treatment facility.[1] Because the record contains clear and convincing evidence of neglect, we affirm the Family Court decree.[2]

At trial, Zachary's social worker testified that when Zachary's neglect petition was filed, three termination-of-parental-rights petitions were pending involving three of Alvarado's other children, each of whom had been previously committed to the care, custody, and control of DCYF. The social worker also testified that while Alvarado was participating in a drug-treatment program in Woon-

---

1. Sstarbirth is a federally funded long-term residential drug-treatment facility for parents and their children. Sstarbirth's program lasts from twelve to eighteen months.

2. We ordered Alvarado to show cause why the issues raised in this appeal should not be summarily decided. After reviewing the parties' memoranda and hearing their arguments, we conclude that cause has not been shown and thus proceed to decide the merits of this appeal.

socket, she left one of her infant children home alone all night. The child was therefore removed from her care, and Alvarado was terminated from the program. In fact Alvarado failed to complete most of the substance-abuse programs to which DCYF referred her.

Moreover, Alvarado admitted, and the trial justice found, that she had a long history of cocaine and alcohol abuse, extending into the first six or seven weeks of her pregnancy with Zachary.[3] Further, Alvarado testified that she has had her "ups and downs" at Sstarbirth and that she was diagnosed with major depression that was being controlled with medication. Significantly she also testified, "I want to leave [Sstarbirth] every day I've been in treatment." The trial justice considered this statement in conjunction with Alvarado's testimony that she had in fact not left Sstarbirth and concluded that Alvarado had as a practical matter conceded her inability to care for Zachary independently.[4] Alvarado argues on appeal that by doing so, the trial justice "misconstru[ed] a positive quality [that is, Alvarado's desire to live independently without the confines of Sstarbirth] as a negative one * * * to justify a finding of neglect."

▮▮▮ When this court reviews a neglect proceeding, "the record is examined to determine if legally competent evidence exists to support the findings of the trial justice." *In re John W.*, 682 A.2d 930, 932 (R.I.1996); *In re Ashley D.*, 621 A.2d 1258, 1259 (R.I.1993) (finding that the "record supports the trial court's determination that DCYF proved its petition [for neglect] by clear and convincing evidence"). Moreover, "[t]he findings of a trial justice are entitled to great weight and will not be disturbed on appeal unless they are clearly wrong or the trial justice misconceived or overlooked material evidence." *In re John W.*, 682 A.2d at 932.

▮▮▮ Even assuming we were in complete accord with Alvarado that her proffered desire to leave Sstarbirth and live independently should not have been held against her by the trial justice, after reviewing the record, we are satisfied that the finding of neglect[5] by the trial justice was otherwise supported by "clear and convincing evidence," R. Juv. P. 17(b). *See Thibodeau v. Metropolitan Property and Liability Insurance Co.*, 682 A.2d 474, 475 (R.I.1996) (affirming trial justice on grounds other than those specifically relied upon by trial justice). Because "[t]he state's role in protecting children may properly be preventive of harm as well as remedial," *In re Lester*, 417 A.2d 877, 881 (R.I.1980), " '[t]here is no requirement that a court wait until a child is actually harmed before such court provides the protection of the state,' " *In re Jennifer R.*, 667 A.2d 535, 537 (R.I.1995). Moreover, " 'evidence of harm to one child of a family is relevant to the issues raised by a dependency-and-neglect petition regarding another child of the family.' " *Id.; see also In re Luz J.*, 447 A.2d 1148, 1152 (R.I.1982) ("[t]he need to protect the other sibling is especially apparent [when] * * * evidence of other incidents of neglect has been introduced").

▮▮▮ Alvarado suggests that this court should take judicial notice of the recent progress she has made as is reflected in several reports that she has proffered to us. We note that the reports were not referred to, much less offered or admitted into evidence, in the Family Court. *See, e.g., Chase v. Bouchard*, 671 A.2d 794, 795 (R.I.1996) ("[o]ne of our most settled doctrines in this jurisdiction is that a matter not raised before the trial court may not be raised for the first time on appeal"). In any event these reports do not present either factual findings or legal rulings that could be judicially noticed. *See In re McKayla C.*, 618 A.2d 1264, 1265 (R.I.

---

**3.** Once she discovered she was pregnant, Alvarado ceased using drugs and, fortunately, Zachary was born healthy and drug free.

**4.** The trial justice also noted in her decision that "use of drugs while in your first trimester of pregnancy is clearly neglect." Although the trial justice's statement could be read in isolation as expressing the notion that such use alone is dis-

positive, the balance of her decision reveals that, in the context of this case, she considered such use as other relevant evidence of neglect. *See In re Michael F.*, 665 A.2d 880, 881 (R.I.1995) (mother admitted neglect based upon her abuse of drugs and alcohol during pregnancy).

**5.** *See* G.L.1956 §§ 14–1–3(8), 40–11–2(1).

1993); *see also In re Michael A.,* 552 A.2d 368, 370 (R.I.1989) ("[t]he general rule that allows a court to take judicial notice of its own records may not be expanded to allow the court to take judicial notice of every document, paper, or report that at some time has been placed in a court file"). Moreover, given Alvarado's track record of repeatedly falling off the abstinence wagon back into the slough of substance abuse, we would be hard pressed to fault the trial justice for not considering any such evidence of progress to be dispositive even if Alvarado had asked the trial justice to consider it, which she did not. Accordingly we decline to take judicial notice of these reports.

The Family Court decree is affirmed, and Alvarado's appeal is denied and dismissed.