Slaving v. Cendant Mortgage Corp., No. 13-1-04 Bncv (Carroll, J., Feb. 10, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

**STATE OF VERMONT**
**BENNINGTON COUNTY, ss.**

**BARBARA SLAVING,**
   **Plaintiff,**

    **v.**           **BENNINGTON SUPERIOR COURT**
               **DOCKET NOS. 13-1-04, 44-1-04Bncv**

**CENDANT MORTGAGE CORP.,**
   **Defendant.**


    **and**


**CENDANT MORTGAGE CORP.,**
   **Plaintiff**


    **v.**


**SHERMAN SLAVING ESTATE,**
   **Defendant**


## ORDER ON PLAINTIFF'S MOTIONS FOR DECLARATORY AND SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Plaintiff Barbara Slaving requests a declaratory judgment from the Court that a mortgage executed solely by her late husband, on their homestead during their marriage, is inoperable as to her homestead property pursuant to 27 V.S.A. § 141. Defendant, and Plaintiff in a concurrent action, Cendant Mortgage Corp., seeks foreclosure on the Slaving property. In response to Cendant's foreclosure suit, Slaving moves for summary judgment arguing that the mortgage at issue is voidable as contrary to Vermont's Homestead Statute found at 27 V.S.A. § 141. In

opposition to Slaving's summary judgment motion, Cendant argues alternatively that it should be subrogated to the rights of the prior mortgagee (also Cendant), and that if subrogation does not apply, the mortgage at issue is a lien secondary to Slaving's homestead interest.

For the following reasons, Slaving's motion for summary judgment is **GRANTED**, and the Court **DECLARES** that the mortgage executed by Sherman Slaving is inoperative to the extent of Barbara Slaving's homestead interest. Cendant's motion for summary judgment is **GRANTED IN PART**. Although Cendant's interest in the Slaving property is inoperative against Barbara Slaving's homestead interest, it is nonetheless a valid property interest that will be held in abeyance until Barbara Slaving's homestead interest terminates. Therefore, Cendant's complaint for foreclosure must be **DISMISSED**.

## Standard for Summary Judgment

Summary Judgment under V.R.C.P. 56 is appropriate when there is "no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56 (c) (3). When reviewing a motion for summary judgment, the court will afford the non-moving party "all reasonable doubts and inferences" based upon the facts presented. Samplid Enterprises, Inc. v. First Vermont Bank, 165 Vt. 22, 25 (1996) (citing Pierce v. Riggs, 149 Vt. 136, 139 (1987)). In the event that the non-moving party opposes the moving party's motion, "[a]llegations to the contrary must be supported by specific facts sufficient to create a genuine issue of material fact." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

## Background

The material facts in this case are undisputed and judgment as a matter of law is

appropriate. On January 28, 2000, prior to his marriage to Plaintiff, Plaintiff's late husband Sherman Slaving purchased property in Woodford, Vermont, consisting of lots 118, 119, and 120 at Woodford Lake Estates. Sherman Slaving borrowed $57,230 from Cendant Mortgage, executed a promissory note, and secured the note with a mortgage on the property in favor of Cendant. The mortgage was recorded on February 1, 2000, in the Woodford land records.

On August 30, 2002, Barbara and Sherman Slaving were married, and resided at the Woodford property, which was their homestead as defined in 27 V.S.A. § 101. On February 6, 2003, Sherman Slaving refinanced the Woodford property in the amount of $71,227, executed a promissory note, and secured the note with another mortgage on lot 118 at the Woodford property in favor of Cendant. Barbara Slaving was not a party to the February 6, 2003 mortgage, although she admits she was aware of it. Sherman Slaving used the proceeds from the February 6 loan to satisfy the prior mortgage on the property in the amount of $56,224.42. Cendant states its belief that the balance of the second loan was used to improve the Slaving property. Cendant then discharged the first mortgage. Sherman Slaving died on August 8, 2004, leaving Barbara Slaving as his widow.

Barbara Slaving filed her complaint for declaratory judgment on January 8, 2004. Cendant initiated its foreclosure action on January 29, 2004. The complaints were consolidated by stipulation and order on July 19, 2004. Pending for the Court's resolution are Plaintiff Barbara Slaving's complaint for declaratory judgment and her related motion for summary judgment. Also pending is Defendant Cendant's cross motion for summary judgment and its foreclosure complaint. This order will dispose of all pending motions.

**Discussion**

3

The issue for the Court is whether the February 6, 2003 mortgage executed solely by Sherman Slaving in favor of Cendant is voidable by Barbara Slaving. If it is, the question then becomes whether Cendant may be subrogated to the rights of the prior mortgagee so that it may proceed with its foreclosure action. Furthermore, if Cendant is not subrogated to the rights of the prior mortgagee, and the mortgage is inoperative, what then becomes of Cendant's right to collect on the debt? The statute and related case law answer these questions.

Vermont's homestead statute, 27 V.S.A. §§ 101-109, 141-145, 181-185, governs the rights and benefits of those individuals entitled to claim the exemption. Section 101 defines "homestead" as a "dwelling house, outbuildings and the land used in connection therewith . . . not exceeding $75,000 in value." 27 V.S.A. § 101. Section 105 provides that the homestead as defined "shall pass and vest in the surviving spouse without being subject to the payment of debts of the deceased." Id. § 105. Section 141, the critical section in this inquiry, provides:

> (a) A homestead or an interest therein shall not be conveyed by the owner thereof, if married, except by way of mortgage for the purchase money thereof given at the time of such purchase, unless the wife or husband joins in the execution and acknowledgment of such conveyance. A conveyance thereof, or of an interest therein, not so made and acknowledged, shall be inoperative so far only as relates to the homestead provided for in this chapter.
> (b) When a mortgagee takes an accruing mortgage, the only debt which shall be secured thereby or become a lien upon the property described therein shall be the debt described in the mortgage and existing at the time of its execution, and any subsequent direct indebtedness of the mortgagor to such mortgagee; provided, that when the mortgage includes a homestead, the written consent of the wife or husband of the mortgagor to the creation of such subsequent direct indebtedness shall be required.

27 V.S.A. § 141.

The statutory provisions make clear that a conveyance of a homestead property interest other than for a purchase money mortgage must be acknowledged by both husband and wife in

4

order to a valid debt assertable against the homestead. Here, despite the fact that Sherman Slaving is denoted on the second mortgage as a "married man," (See Slaving Mot. for Summ. J., at Ex. F), Cendant proceeded with the mortgage despite Barbara Slaving's absence from the transaction. The plain language of the statute indicates that a conveyance contrary to the statute's restrictions is "inoperative so far only as relates to the homestead provided for in this chapter." 27 V.S.A. § 141(a).

In Estate of Girard v. Laird, 159 Vt. 508 (1993), the Court overruled Martin v. Harrington, 73 Vt. 193 (1901), clarifying and limiting the extent of the homestead exemption. Martin had held that a deed to homestead property executed by only one spouse was "void ab initio for non-compliance with the statute." Girard, 159 Vt. at 510-11. In supplanting the Martin rule, the Court concluded that a conveyance of homestead property by only one spouse is "ineffective with respect to the spouse who did not join it and may be set aside by that spouse *unless the homestead interest is otherwise extinguished*." Id. at 517 (emphasis added). In its new formulation, the Court concluded that as an inchoate property right, the homestead interest could be relinquished through divorce, alienation, or abandonment for example. In other words, the homestead exemption is co-extensive with its policy goals, and co-terminable with an individual's status as a 'homesteader.' See Girard, 159 Vt. at 516 (quoting Speck v. Anderson, 318 N.W.2d 339, 344 (S.D. 1982) ("to permit the assertion of the homestead exemption to be raised by those who have no rights under the homestead exemption statutes would be to arm with a sword those who need no such weapon").

Here there has been no relinquishment by Barbara Slaving, and thus her interest in the homestead is superior to Cendant's mortgage on the property during the homestead's existence.

5

Girard, 159 Vt. at 517. Cendant's interest can be said to be dormant during the homestead's existence. See Mercier v. Partlow, 149 Vt. 523, 527 ("lien can attach to the homestead property but lie dormant until the property is no longer held and used as a homestead"); 40 Am. Jur. 2d Homestead § 84 (1999) ("Only after the [homestead] exemption has ceased to exist may the property become liable for the payment of the claims of the owner's creditors.").

Nonetheless, Cendant urges the Court to apply equitable subrogation to place Cendant in the shoes of the prior mortgagee. The thrust of Cendant's argument is that because a conveyance and mortgage for purchase money is not subject to the spousal signature requirement, 27 V.S.A. § 141(a), and the first mortgage was a purchase money mortgage paid off by the second loan, Cendant should be placed in the shoes of the prior mortgagee. Cendant is correct that a purchase money mortgage is excepted from the signature requirement. See 27 V.S.A. § 141(a) ("mortgage for the purchase money thereof given at the time of such purchase" does not need acknowledgment of both spouses). However, although the loan secured by the subsequent mortgage–and executed solely by Sherman Slaving–was used to satisfy the prior purchase money mortgage, this does not make Cendant's refinancing transaction a purchase money mortgage as well. This argument has been considered and rejected as leading to an "absurd result" where "any mortgage would be a purchase money mortgage so long as some portion of the funds from the loan secured by the mortgage was used to satisfy a loan for purchase money." Wells Fargo Home Mortgage, Inc. v. Chojnacki, 668 N.W.2d 1, 4-5 (Minn. Ct. App. 2003). In its argument, Cendant wishes to fill the shoes of the prior mortgagee without first being able to take the steps required to fill those shoes.

6

For subrogation to override the homestead statute's requirements, there must be circumstances present to invoke the equitable remedy. Where "one party provides funds used to discharge another's obligations," id. at 5, and the anticipated security interest fails, subrogation will apply to place the lender in the shoes of the prior security interest-holder if the lender has relied upon a justifiable or excusable mistake of fact, or where injury to innocent parties will result. Id. Here, Cendant loaned Sherman Slaving money to satisfy the original purchase money mortgage, and attempted to secure the loan with a subsequent mortgage on the property. However, the inescapable problem for Cendant is that it created the faulty mortgage it now asserts should be the basis for subrogation. Therefore, Cendant cannot be said to have relied on any justifiable mistaken belief with respect to Sherman Slaving's marital status or Barbara Slaving's acknowledgment of the conveyance. Cendant also points to language from Hunt v. Davis in which the Court noted that a lender "is entitled to be subrogated to the rights of the prior mortgagee in case the borrower fails to execute a new mortgage, or in case the new mortgage proves to be invalid or defective." Hunt v. Davis, 90 Vt. 153 (1916). Given Cendant's role in the creation of the inoperative mortgage, Hunt provides no relief absent circumstances suggesting Cendant was misled with respect to Sherman Slaving's marital status, or had relied on any other representations regarding Barbara Slaving's assent in the conveyance of the homestead property.[1] As in Chojnacki, Cendant acknowledged on the mortgage documents that Sherman

---

[1]Cendant also relies on Katsivalis v. Serrano Reconveyance Co., 70 Cal. App.3d 200 (1977) for its argument that subrogation should apply here. In Katsivalis, the court subrogated a subsequent lender to the rights of the original mortgagee despite non-compliance with a similar

Slaving was a married man, yet inexplicably accepted the mortgage without Barbara Slaving's acknowledgment. See Chojnacki, 668 N.W.2d at 6.

To apply subrogation here would be directly contrary to 27 V.S.A. § 141, and would undermine the goals it seeks to accomplish by allowing Cendant to foreclose on a mortgage of homestead property conveyed unilaterally during marriage by Sherman Slaving. See Mercier, 149 Vt. at 524 (1988) (quoting R. Waples, Homestead and Exemption ch. 1, § 2, at 3 (1893)) (the homestead exemption seeks to protect "'homes from forced sales so far as it can be done without injustice to others'"). Moreover, Cendant cannot be said to be an innocent party given its position as a professional purveyor of loans and holder of security interests. Equity will not intervene to disregard unambiguous provisions in Vermont's statutory law in order to save Cendant from its own mistake.

Finally, Cendant argues that if subrogation does not apply here, its loan to Sherman Slaving then becomes a lien secondary to Barbara Slaving's homestead interest. Cendant is correct in this regard. In Girard, the Court made clear that the homestead interest may be extinguished. The implication is that at some future point, whether through death, devise, sale, or abandonment Barbara Slaving's homestead interest will dissolve, at which point Cendant may

homestead statute. Id. However, Katsivalis is distinguishable. There, the subsequent deed of trust executed in favor of the mortgagee contained an acknowledgment by the surviving spouse in the form of her husband's signature as attorney in fact under her name. The court held that there was "sufficient evidence" that both spouses intended the refinancing. Id. There is no such evidence here warranting application of the equitable remedy.

8

assert its interest in the property. At present, however, Barbara Slaving's homestead interest is superior during its lifetime to any interest presently held by Cendant.

## ORDER

For the foregoing reasons, Plaintiff Barbara Slaving's complaint for declaratory judgment is **GRANTED**. The February 6, 2003 mortgage executed on the Slaving homestead is inoperative against Barbara Slaving's homestead interest. Therefore, Barbara Slaving's motion for summary judgment is also **GRANTED**. Cendant's motion for summary judgment is **GRANTED IN PART** insofar as its interest in Barbara Slaving's homestead property is a dormant lien on the property not enforceable during the life of the homestead. Cendant's complaint for foreclosure is hereby **DISMISSED**.

Dated this _____ day of February, 2005, at Bennington, County of Bennington, Vermont.

_____
Karen R. Carroll
Presiding Judge

9